IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT AT ANCHORAGE

STATE OF ALASKA,                )
                                )
            Plaintiff,           )
                                )
      vs.                        )
                                )
CONRAD J. WORTHY,                )
                                )
            Defendant.           )
_____ )

Case No. 3AN-S94-5757 CR.

SENTENCING MEMORANDUM OF CONRAD WORTHY

---

### VRA CERTIFICATION

I certify that this document and its attachments
do not contain (1) the name of a victim of a
sexual offense listed in AS 12.61.140 or (2) a
residence or business address or telephone number
of a victim of or witness to any offense unless
it is an address used to identify the place of the
crime or it is an address or telephone number in
a transcript of a court proceeding and disclosure
of the information was ordered by the court.

---

- Introduction -

After several weeks of trial and several days of
deliberation, an Anchorage jury convicted Conrad Worthy of sexual
assault against T.J.S. in the second degree, a class B felony.
The sentencing range for a B felony is 0-10 years. There is no
presumptive jail term for a first felony offender. A.S.
12.55.125(d).

This sentence memorandum will discuss the facts of the
case and the general sentencing considerations to be applied by
this Court pursuant to State v. Chaney, 477 P.2d 441 (Alaska 1970)

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

EXHIBIT ___
Page ___ of ___

and <u>State v. Jackson</u>, 776 P.2d 320 (Alaska App. 1989).

I.    FACTUAL BACKGROUND

The conviction here stemmed from an incident on August 6, 1994, in which Mr. Worthy and T.J.S. -- former domestic partners-- argued about their relationship.    Mr. Worthy became angry and combative towards T.J.S.  She became hysterical and fearful.  The whole incident probably took 20 minutes or less.

A.    <u>Transactional Witnesses</u>

This court has heard copious transactional testimony concerning this short but painful incident witnesses included T.J.S., Conrad Worthy, Michelle Leffel, officers at the scene, the clerk at Mike's Mini Mart and medical personnel at Alaska Regional Hospital.  This court has the observed the various transactional witnesses and their demeanor.

B.    <u>Character witnesses</u>

The court has also heard testimony from numerous character witnesses who attested to Conrad Worthy's good reputation for truthfulness and kind treatment of women partners.  Included in the defense witnesses were defendant's former wife, Linda Rickman, who testified that Conrad had trouble understanding their marriage was over, and frequently asked for counselling or "another try." Mrs. Rickman was emphatic that Conrad was never physically angry or violent towards her or towards their daughter, Kim.

Ann Deeson, another former sexual partner, testified that

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
· (907) 277-7171

EXHIBIT ___5___
Page ___2___ of _12_        0553

Conrad Worthy was gentle and caring towards her. She testified, in substance, that Conrad Worthy was disbelieving and sad when Ann ended the relationship because of family pressure. However, she was clear that Conrad Worthy never engaged in behavior that was physically threatening or verbally abusive behavior.

There was also testimony about the troubled background and reputation of T.J.S. This testimony came from T.J.S., a former husband, several co-workers (Tammi Borenschein, Michelle Leffel) and her friend Vonda Benedict.

C.  Quasi-Divorce Dispute

No memorandum nor presentence report can recreate the emotional testimony which the court observed. This was an unfortunate, bitter relationship, in which both parties exploited the other although, at times, both parties had good intentions. The bitterness continued throughout the trial. It even involved the children of T.J.S., although Conrad Worthy had been a primary and stable caretaker for them during T.J.S.'s work in Barrow and St. Mary's.

The court can perhaps analogize this case to domestic disputes, understanding that good, law-abiding people reach a point in a relationship where they do stupid, nasty things. They exaggerate the flaws of the other, and they refuse to separate in a reasonable, businesslike way.

A significant difference between this case and an ordinary divorce dispute is the existence of a conviction for a

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

Sentencing Memorandum of Conrad Worthy -- Page 3

EXHIBIT 5
Page 3 of 12

sexual assault. However, no party in a divorce -- whether doctor, lawyer or missionary -- is without the capacity for anger or cruelty to the other spouse. Some cruelty exhibited in lengthy child custody cases persists far longer than the actions of Conrad Worthy on the night of August 6. Indeed, the fact that a crime occurs in a domestic relation does not excuse the crime: it may even make the actions more exploitative. However, the important aspect of a domestic dispute is that its particular chemistry -- the anger between two partners -- is unlikely to reoccur, particularly where one of the partners is a stable businessman and loving father.

D.  Potential for Rehabilitation

One key point made clearly by most witnesses was that this incident -- if it occurred as T.J.S. testified -- was a momentary aberration in the long and peaceful life of Conrad Worthy. He has spent all of his adult life acquiring an education, a business and a family. He helps people. He has numerous friends and supportive business contacts.

Outside of the relationship with T.J.S., Conrad Worthy's life is blameless. He is extremely unlikely to offend again. His business has been lost because of the conviction, yet he has responded by working hard in lower level jobs. He has obeyed the orders of the court. His prospects for rehabilitation are excellent.

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
. (907) 277-7171

EXHIBIT 5
Page 4 of 12

0505

## II.  STATEMENTS OF T.J.S.

T.J.S. has spoken to the presentence reporter and written a letter to the court.

### A.  Presentence Report Remarks

In the statement to the presentence reporter, T.J.S. claims that Conrad Worthy has repeated problems separating from intimate relationships.  T.J.S. cites an alleged conversation with Linda Rickman and an unspecified other relationship, which T.J.S. had not mentioned before.  The presentence reporter, Kay Bounds, quotes T.J.S. fairly exactly, and uses this quote for the conclusion that Conrad Worthy has difficulty separating in relationships.

In conversation with Kay Bounds on September 11, 1995, the undersigned counsel learned that Ms. Bounds was careful about her wording.  Ms. Bounds -- who will be available at sentencing -- said T.J.S. told Ms. Bounds she "talked to" Linda, the ex-wife. Ms. Bounds consulted her notes to determine that T.J.S. described an actual personal, verbal conversation with Linda Rickman.  Ms. Bounds was not paraphrasing.

The conversation between Linda Rickman and T.J.S. as related by T.J.S, is fictional.  Linda Rickman, as she states under oath in her affidavit, herewith attached, has _never_ spoken to T.J.S.  Since T.J.S. lied or exaggerated to the presentence reporter, all her remarks should be viewed with caution.  Linda Rickman, as the court will recall, was a forthright, businesslike

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
. (907) 277-7171

EXHIBIT  5
Page  5  of  12   0556

mother and professional who came to Alaska. She provided character testimony for her ex-husband, whom she still respects. Ms. Rickman has no reason to lie about the non-existence of a conversation with T.J.S. Ms. Rickman will be available to testify at sentencing.

B.    <u>Letter to the Court</u>

In a letter to the court, T.J.S. described injuries, missing clothing, psychiatric problems and forced job changes for which she blamed Conrad Worthy. However, this court can recall T.J.S.' testimony. Her job in St. Mary's was winding down. She was going to leave St. Mary's regardless of Conrad Worthy, although she hesitated because of Brian. Mark Air soon closed up shop. T.J.S., in "The Book of Brian," worried because the schools were bad in St. Mary's. She exulted in finding a good job with good benefits at Fred Meyers in Anchorage. For her now to portray a forced move from an idyllic land, to a horrible existence because of Conrad Worthy, is an exaggeration and an illustration of self pity.

Similarly, with T.J.S.'s history of erratic parenting and drug abuse, it is unlikely a Providence in-patient mental health admission was solely caused -- or even triggered -- by Conrad Worthy. Certainly, such "cause and effect" cannot be assumed, in the absence of documentary proof, particularly where T.J.S.' life unfortunately contained many stressors and traumas before she ever met Conrad Worthy.

Even with regard to the one out-patient document provided

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

EXHIBIT ____5____
Page __6__ of _12_

by the district attorney, the diagnosis for T.J.S. is "neurotic depression" as well as "post traumatic stress disorder."

Concerning the property which T.J.S. claimed to lose, Conrad Worthy has invoices of numerous items he previously shipped to T.J.S. in St. Mary's. This information will be produced at sentencing. This shipped material was the bulk of T.J.S.'s property.

In October of 1995, T.J.S. appeared at Conrad Worthy's home to take back her property in the presence of the undersigned attorney and her investigator Marie Vogler. Although T.J.S. purported to be anxious to get the property back, she was indifferent about the time and approximately three hours late. She scooped up such items as outdated textbooks, plastic dish racks, souvenirs and kitchen utensils. It was apparent to counsel and the investigator that T.J.S. was aggrandizing the mundane experience of separating a household into a dramatic quest for treasure. (The investigator will be available at sentencing.)

Further, T.J.S. makes certain vague accusations about harassment and vandalism which she obliquely attributes to Conrad Worthy, who does not know her phone or address. This case was vigorously fought by the prosecution. The prosecutor was alert to protect the victim and her family. There was no violation of bail brought to the attention of the court. There were no receipts for repair of the alleged vandalism or documentation (dates, times, witnesses) of the alleged harassment. Certainly some of T.J.S.'

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
. (907) 277-7171

EXHIBIT    5
Page    7    of   12    0555

troubles justifiably fall on Conrad Worthy's shoulders. But not all of them.

III.  APPLICABLE LAW

The Alaska Court of Appeals, in State v. Jackson, 776 P.2d 320, 326-7 (Alaska App. 1989) set four distinct sentencing ranges for first offenders convicted of class B felonies. Though not "inflexible categories to be rigidly adhered to," these four categories establish "general guidelines" or "benchmarks" that should be used as a starting point in analyzing the appropriate sentence for first offenders. Id., at 327.

The first category encompasses a typical offender who commits a typical or moderately aggravated offense. That person should receive an unsuspended term of at least one year, but not more than four years (which is the presumptive sentence for a second felony offender). Id., at 326.

The next category involves an offense that is exceptionally aggravated. In that situation, the offender should receive a term of up to six years of unsuspended incarceration (the presumptive sentence for a third felony offender). Id., at 326. Although the Court was not clear in Jackson, one might assume the minimum sentence in this category is at least one year of unsuspended incarceration.

The third category deals with cases less serious than the norm. These cases, which either involve mitigated conduct or an

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

EXHIBIT  5
Page  8  of  12

0589

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

offender with particularly favorable prospects for rehabilitation, call for at least ninety days of unsuspended incarceration ("nonprobationary sentence"), but less that the one to four-year range for typical offenses. Id., at 326. The court also noted that, "in such cases, sentencing courts have broad discretion to require that any period of incarceration be served as a condition of a suspended imposition of sentence." Id., at 327.

Finally, the fourth category deals with cases that are "significantly mitigated in terms of both the offender and the offense." Id., at 327. It is in these cases that a probationary sentence is appropriate.[1] The Court of Appeals went on to explain this category by stating: "a probationary sentence will be appropriate only when an offender's conduct is significantly less serious than typical conduct for the offense and only when the offender's prospects for rehabilitation are shown to be significantly better than the typical first offender's conduct." Jackson, 776 P.2d at 327.

Depending on the circumstances of the particular case, courts will recognize many different mitigating factors in determining which category should govern the sentence. Some of these factors include: the defendant's steady work record and strong family ties, Hooper, 750 P.2d at 841; the fact that the

---

[1] The Alaska Supreme Court defined a probationary sentence to include up to sixty days' incarceration. Leuch v. State, 633 P.2d 1006, 1014, n. 22 (Alaska 1981); see also State v. Hooper, 750 P.2d 840, 842, n. 3 (Alaska App. 1988).

EXHIBIT ___
Page ___ of ___

0560

incident was a situational response to various stresses in the defendant's life and there was little likelihood of repetition of the offense, State v. Capjohn, 779 P.2d 1255, 1257 (Alaska App. 1989); and the defendant's strong educational background, Jackson, 776 P.2d at 327.

Finally, the Jackson court addressed the options available to sentencing courts in structuring sentences. Although the Court of Appeals disapproved of the lower court's sentence, it did note the significance of the 1000-hour community work requirement imposed on the defendant. It stated: "We have previously emphasized that in cases involving first offenders convicted of class B felonies, sentencing courts have broad discretion to provide for periodic confinement on weekends or at other suitable intervals, and to substitute community work for incarceration." Id., at 328.

Under Jackson, this case calls for treatment in the fourth category because of the mitigated offense and offender. The offense was virtually momentary and unlikely to reoccur. Though this couple argued and shouted, their is not history of physical violence. Conrad Worthy, on August 6, was under great stress. He was losing a relationship he valued, and he felt manipulated. T.J.S. did suffer physical injury, but it did not require in-patient treatment nor out-patient follow up. The prescription was "Advil for pain." Certainly T.J.S. suffered emotional injury and fear. But almost every crime, even the mitigated ones, involve

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

EXHIBIT  5  0861
Page  10  of  12

harm to the victim.

In terms of the offender, Conrad Worthy is unlikely to reoffend. He is a hard worker, a good friend and a good father. In every other circumstance, he treats women friends and co-workers well. He lost a lucrative business and his reputation over this incident. He has nevertheless worked hard in new, low-level jobs. He has great skills and motivation for community service. He has served many months in third-party custody or substantial house arrest.

IV.  CONCLUSION

The defense respectfully requests this court to consider Conrad Worthy's general good character, the transitory and unique nature of the offense upon T.J.S., his potential for rehabilitation, and the severe sanctions -- economic and personal-- he has already suffered as a result of this case. The objectives of Chaney and Jackson can be satisfied by a fine, probation and lengthy community service. Neither the public nor T.J.S. needs to jail Conrad Worthy to obtain protection.

DATED this 11th day of September, 1995 at Anchorage, Alaska.

_Sue Ellen Tatter_
Sue Ellen Tatter
Attorney for Conrad Worthy

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

EXHIBIT 5
Page 11 of 12

SUE ELLEN TATTER
ATTORNEY AT LAW
360 "K" Street, Suite 300
Anchorage, Alaska 99501
(907) 277-7171

Certification

This is to certify that a
copy of the Sentencing Memorandum
of Conrad Worthy is being delivered to:

Adrienne Bachman
Assistant District Attorney
310 K Street, Suite 520
Anchorage, Alaska 99501

On: _September 11, 1995_
BY: _Diana M Cale_

EXHIBIT __I__    0568
Page _12_ of _12_