Andrew Guidi
DELANEY WILES, INC.
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
  (907) 279-3581
  (907) 277-1331 fax
*Attorneys for Defendant*
*AMERICAN HOME ASSURANCE COMPANY*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| TJ IVEY, RENEE M. CROUSE, ) <br> BRIAN J. CROUSE, and ) <br> JESSICA LYNN SKEEN, ) <br> ) <br> ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> AMERICAN HOME ASSURANCE ) <br> COMPANY, ) <br> ) <br> ) <br> Defendant. ) <br> _____ ) | Case No. A03-0202-CV (TMB) |

**AMERICAN HOME ASSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

American Home Assurance Company's ("American Home") motion has established that the insured's sexual assault on a former girlfriend did not constitute a "professional service" and was thus not within the grant of insurance coverage. American Home's motion also established that the insured's sexual assault on a former girlfriend constituted criminal or malicious conduct involving bodily injury or property damage and was thus excluded from coverage. Plaintiffs'

1

opposition fails to present evidence to contradict either of these positions. Plaintiffs' sole argument to preclude summary judgment is that an insurer should never be allowed to assert that an insurance policy does not cover certain actions of the insured once the insured has allegedly tendered defense to the insurer – even though the unambiguous terms of the policy's insuring clause do not even potentially cover the alleged actions of the insured. However, extensive case law from United States Courts of Appeals holds that an insured cannot manufacture coverage by estoppel when an insurance policy does not cover the allegations against the insured. Moreover, plaintiffs have failed to establish the existence of the elements of estoppel. Therefore, American Home is entitled to judgment as a matter of law. For all these reasons, the Court should grant American Home's Motion for Summary Judgment at this time and dismiss all claims against American Home with prejudice.

## II.   UNDISPUTED FACTS

The insured, Conrad J. Worthy, pleaded guilty to fourth-degree Assault and fourth-degree Criminal Mischief for his brutal attack against his former girlfriend, T.J. Ivey.[1] Subsequently, Worthy was represented by competent counsel in the defense of the civil action brought by plaintiffs against him.[2] State Farm paid Worthy's defense costs in that action.[3] Plaintiffs allege Schleuss tendered defense of the lawsuit to American Home in a letter written on September 18, 1998.[4] In so doing, plaintiffs allege Worthy tendered his defense in direct violation of the claim reporting directions.[5] Worthy's policy documents instructed him "**Do not send an Errors and Omissions claim form directly to American Home.**" Rather, the policy documents instructed

---

[1] Exhibit A hereto, guilty pleas to fourth-degree Assault and fourth-degree Criminal Mischief.
[2] Exhibit B hereto, letter from Christine Schleuss to Conrad Worthy, September 18, 1998.
[3] *Id*.
[4] Complaint at 2, ¶ 5.
[5] Exhibit C hereto, "Agents' Errors and Omissions" at 2.

Worthy to send a claim report through designated claim channels, and Worthy did not do that.[6] Worthy's counsel, Christine Schleuss, believed the American Home errors and omissions policy did not cover the allegations against Worthy, and thus would not protect Worthy "in any way because it [the policy] seems to exclude the allegations in [the] amended complaint."[7] Because State Farm was already paying Worthy's defense costs, and because Schleuss believed the American Home policy did not cover the allegations against Worthy, Worthy did not contact American Home to determine whether American Home had received his tender, or whether American Home had accepted the tender.

### III.   ARGUMENT

#### A.   An Insured Cannot Manufacture Coverage by Estoppel when an Insurance Policy Does Not Cover the Allegations Against the Insured

An insured cannot manufacture insurance coverage by estoppel. If the converse of this simple rule were true, a person insured under an auto policy could create coverage under that policy by tendering a claim to the auto insurer regarding a loss sustained when his home was destroyed by fire and then assert the auto insurer was estopped from disputing coverage. In that case, as here, the insurance policy simply does not include the loss in its grant of coverage. In addition, because Alaska recognizes a general public policy against insuring a person against liability for intentional acts, plaintiffs' argument violates public policy by asking the Court to find

---

[6]American Home's policy states:

> No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, and until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Exhibit G hereto, American Home Errors and Omissions Insurance policy, at page 3, Conditions ¶ 8.
[7] Exhibit B at 1.

insurance policy coverage for allegations of sexual assault. *See Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska 1995).

No Alaska case law has directly considered whether an insured can expand the grant of insurance coverage under an estoppel argument. However, regarding the analogous situation of waiver, the Alaska Supreme Court has noted: "[i]t is a general rule of insurance law that "(t)he doctrine of waiver … does not pertain to matters of coverage so as to extend the scope of the contract beyond its express terms…" *Mountain View Sports Center, Inc. v. Commercial Union Assurance Co.*, 599 P.3d 1382, 1386 (Alaska 1979).

Numerous United States Courts of Appeals have ruled an insured cannot expand the original grant of insurance coverage under an estoppel argument. The Ninth Circuit Court of Appeals has ruled, under Oregon law, estoppel cannot be the "basis for creating an original grant of coverage where no such contract previously existed." *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F.2d 1296, 1303 (9th Cir. 1987). The Ninth Circuit has also noted:

> [t]he general rule seems to be that the doctrines of waiver and estoppel will not suffice to bring risks within the coverage of an insurance policy if the risks are not covered by the terms of the policy or are expressly excluded by it.

*Brown v. First Ins. Co. of Hawaii*, 424 F.2d 680, 681 (9th Cir. 1970) (reversing judgment for insured and ruling instead that insured had presented insufficient evidence to establish estoppel). The Fourth Circuit Court of Appeals has also affirmed the ruling that an insured cannot assert estoppel where the effect would be to add or extend policy coverage. *C. Douglas Wilson & Co. v. Ins. Co. of North America*, 590 F.2d 1275, 1279 (4th Cir. 1979) (affirming judgment n.o.v. for insurers). In addition, the Tenth Circuit Court of Appeals has also ruled that an insured could not expand the grant of coverage "beyond the clear terms and provisions of the policy on the ground

4

of waiver or estoppel." *United Pacific Ins. Co.*, 185 F.2d 443, 447 (10th Cir. 1950) (reversing the district court's ruling and holding in favor of the insurer).

The Florida Court of Appeals has noted: "[t]he general rule is well established that the doctrine of waiver and estoppel based upon the conduct or action of the insurer … is not applicable to matters of coverage as distinguished from grounds of forfeiture" *Unijax v. Factory Ins. Corp.*, 328 So.2d 448, 450 (Fla. App. 1976). (quotation omitted). The court clarified that an insurer may be estopped by its conduct from seeking a forfeiture of a policy, but that estoppel cannot expand the grant of coverage provided by the insurer. *Id*. The court then explained why estoppel could not expand a policy's grant of coverage:

> While waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom. The theory underlying this rule seems to be that the company should not be required by waiver and estoppel to pay a loss for which it charged no premium, and the principle has been announced in scores of cases involving almost every conceivable type of policy or coverage provisions thereof.

*Id*. Rejecting an estoppel argument to expand coverage to cover a parent corporation that did not sustain any loss when a subsidiary corporation suffered a fire, the Florida Court of Appeals affirmed summary judgment for the insurer. *Id*. at 457.

The New York Supreme Court has also ruled that an insurer was not precluded from asserting a coverage defense that the insurer failed to enumerate in its disclaimer letter. *Fogelson v. Home Ins. Co.*, 514 N.Y.S.2d 346, 348 (N.Y. App. Div. 1987) (ruling the related issue of waiver cannot expand an insuring clause but instead applies when an insurer's conduct demonstrates an intention to abandon policy defenses such as failure to cooperate or failure to give timely notice of a claim); *accord Continental Ins. Co. v. Estate of Benton*, 896 F.Supp. 272, 274 (N.D. N.Y. 1995) (granting summary judgment for insurer and ruling "where the issue is the existence or

nonexistence of coverage … the doctrine of waiver is simply inapplicable"). In addition, the Texas Court of Appeals has also ruled, under the law of that state, that waiver and estoppel may avoid a forfeiture of a policy, but they cannot enlarge the risks covered by a policy. *Great American Reserve Ins. Co. v. Mitchell*, 335 S.W.2d 707, 708 (Tex. App. 1960) (holding, along with the majority rule, "waiver and estoppel can not create a new and different contract with respect to risks covered by the policy.")

The Fifth Circuit Court of Appeals has also ruled that estoppel cannot be used to expand the coverage of an insurance policy. *Kaminer et al. v. Franklin Life Ins. Co.*, 472 F.2d 1073, 1077 (5th Cir. 1973). In *Kaminer*, the beneficiaries of a life insurance policy sued the insurer on the grounds they were entitled to the proceeds under the policy. *Id*. at 1073-74. As part of a trust agreement and profit sharing plan, the insured had executed the policy and undergone a medical examination prior to her death. *Id*. at 1074. The insured died soon thereafter of carbon monoxide poisoning. After the insured's death, a check for premiums for the first year's coverage was delivered to the insurer. With full knowledge of the insured's death, the insurer secured the signature of the trustee on the check and delivered to the trustee a policy insuring the life of the deceased insured. *Id*. at 1075. When the beneficiaries submitted a claim for payment under the policy the insurer denied coverage on the sole grounds that the insured had committed suicide. *Id*. The letter denying coverage included a check as a refund of the premium payment. *Id*.

The application for insurance stated a policy would not be considered in effect until it had been approved and accepted by the insurer, and had then been delivered and accepted by the insured. At trial, the insurer asserted, in addition to the defense that the insured had committed suicide, that because the policy had not been issued and delivered to the insured during her life, no policy ever went into effect. *Id*. at 1074. The district court granted the insurer summary judgment

on the ground that no policy had ever existed. *Id*. On appeal, the Fifth Circuit Court of Appeals affirmed summary judgment for the insurer, ruling the policy never went into effect because it was never delivered and accepted by the insured. *Id*. at 1076. The court rejected the beneficiaries' argument that the insurer was estopped to deny coverage by having accepted the premium check after it had learned of the insured's death. *Id*. The court noted that courts treat forfeitures of insurance coverage differently from grants of coverage:

> Courts are extremely liberal in their application of the doctrines of waiver and estoppel to obviate the forfeiture of a contract of insurance. It is equally well settled, however, that those doctrines cannot be used to extend the coverage of an insurance policy or to create a primary liability.

*Id*. The court explained that "[t]o hold [the insurer] estopped to assert that it did not contract to insure the life of a deceased person would be a perversion of an equitable doctrine." *Id*. at 1077.

Here, the allegation that American Home did not respond to Worthy's tender letter cannot expand the coverage provided because the policy covering Worthy for negligence in his professional services as an insurance agent simply did not cover the allegation that Worthy sexually assaulted his former girlfriend. As in *Kaminer*, discussed above, to hold otherwise would pervert the equitable doctrine of estoppel. The case law cited above from numerous federal and state appellate courts controls this case. To allow plaintiffs to assert American Home should be estopped from denying coverage would be tantamount to allowing the life insurance beneficiaries in *Kaminer* to estop the insurer from challenging that a life insurance policy cannot be entered into on behalf of a person who is already dead. The Fifth Circuit noted the district court's conclusion that "there is no such thing as a contract entered into for the purpose of insuring the life of a deceased person." *Kaminer*, 472 P.2d at 1074 n.1. Similarly, there is no such thing as an errors and omissions policy covering negligence in "professional services … as an insurance agent" that covers allegations of sexual assault against a former girlfriend. Plaintiffs in this case, standing in

7

Worthy's position, cannot expand the grant of coverage under a policy for "professional services … as an insurance agent" to include sexual assault against a former girlfriend. In conclusion, the Court should grant American Home summary judgment because, as the numerous federal and state appellate courts cited above have ruled, plaintiffs' estoppel argument cannot expand the original grant of coverage.

**B.    Plaintiffs Have Failed to Cite Any Legal Authority That American Home Should Be Estopped From Denying Coverage**

Because Worthy had no potential for coverage under his errors and omissions insurance policy, plaintiffs have tried to manufacture coverage by attempting to argue American Home should be estopped from denying coverage. The Court should reject plaintiffs' argument because plaintiffs had the burden of proving the elements of estoppel existed, and because plaintiffs have failed to present evidence to meet that burden. Further, Alaska case law regarding estoppel does not support plaintiffs' argument that estoppel should apply in this case because plaintiffs have failed to present evidence of American Home's bad faith.

Alaska case law does not support a finding of estoppel in this case. For estoppel to apply, plaintiffs must establish the presence of four necessary elements:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*O'Neill Investigations, Inc. v. Illinois Employers Ins.*, 636 P.2d 1170, 1177-78 (Alaska 1978) (quoting *Bequette v. National Insurance Underwriters, Inc.*, 429 F.2d 896, 900 (9th Cir. 1970)). Generally, absent exceptional misconduct of an insurer, those courts that extend insurance coverage where none exists based on estoppel require that the insurer, with knowledge of the facts and without reservation of rights, assumes an obligation to defend and later disclaims it. But this

result depends on a showing by the insured that it relied to its detriment on the insurer's acceptance of an obligation to defend.

Plaintiffs had the burden of proving the elements of estoppel existed. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (affirming the district court's grant of summary judgment to movant because non-movant had failed to establish the existence of an element essential to the non-movant's case). As the United States Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Id*. When the non-moving party fails to meet its burden of presenting a necessary element of her case, Fed. R. Civ. P. 56(c) "mandates" summary judgment in favor of the moving party. *Id*. In that situation, "[t]he moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. Moreover, the non-moving party *cannot* survive summary judgment merely by presenting a scintilla, or slight amount, of evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Rather, the non-moving party must present sufficient evidence to require a reasonable fact finder to return a verdict for that party. *Id.*, 477 U.S. at 249, 106 S.Ct. at 2511. Further, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.*, 477 U.S. at 247-48, 106 S.Ct. at 2510 (emphasis in original).

Here, plaintiffs have failed to meet their burden of establishing the elements of estoppel exist. Plaintiffs have even failed to discuss the elements of estoppel, much less to show facts supporting those elements. Plaintiffs have stated that their failure to establish a genuine issue of material fact should not be deemed an acquiescence to American Home's argument. Opposition to American Home's Motion for Summary Judgment at 2. However, plaintiffs have failed to recognize they had a burden to establish the existence of the elements of estoppel. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548. Plaintiffs have also stated summary judgment was premature because discovery is still ongoing. Opposition to American Home's Motion for Summary Judgment at 6. Plaintiffs filed their Complaint in this case on April 30, 2003, almost three years ago. The parties have exchanged sets of discovery requests and discovery responses. In addition, the parties have deposed Worthy's counsel, Christine Schleuss.[8] In that deposition, the parties obtained Ms. Schleuss's complete file on her defense of the criminal prosecution and the civil action against Worthy, consisting of literally thousands of pages of discovery. Plaintiffs' argument that summary judgment is premature should be rejected. Plaintiffs have failed to meet their burden to establish a genuine issue of material fact on the issues raised by the Motion for Summary Judgment. Accordingly, the Court should grant American Home's Motion for Summary Judgment at this time.

The elements of estoppel do not exist in this case. Regarding the first element, plaintiffs have failed to establish American Home was in fact aware of the facts of the case and did nothing about it. American Home has denied it received sufficient notice of the claims against Worthy.[9] Because State Farm was already paying Worthy's legal defense costs,[10] and because Worthy's counsel believed there was no coverage under the American Home's errors and omissions

---

[8] Exhibit D hereto at 1-2, Notice of Records Deposition of Christine Schleuss.
[9] Exhibit E hereto at paragraphs 5 and 7, page 3; paragraph 10, page 6, Answer, dated September 15, 2003.
[10] Exhibit B at 1.

policy,[11] Worthy and his counsel did not determine whether American Home had received the tender letter, or determine whether American Home had accepted or rejected the tender.[12] Plaintiffs have failed to meet their burden to establish the existence of this element of estoppel.[13]

Plaintiffs have also failed to establish the second element of estoppel: that American Home intended its conduct would be acted on or that American Home acted such that Worthy had a right to believe it was so intended. There was no action taken by American Home to the tender letter; therefore, it cannot be said that American Home intended for Worthy to rely on anything. American Home did not misrepresent any coverage position to Worthy. In fact, American Home's lack of response to the tender letter allegedly sent to it should have informed Worthy and plaintiffs that American Home had not received the letter. This is especially true in light of Worthy's failure to comply with the designated claims reporting procedure specifically outlined in the instructions relating to claim reporting.[14] Those instructions also instructed Worthy in bold-face type "**Do not send an Errors and Omissions claim form directly to American Home**."[15] Plaintiffs have not established Worthy complied with these instructions and cannot do so because he did not.

---

[11] *Id*. There is evidence that the confession of judgment against American Home for an amount in excess of $1.5 million was unreasonable. Counsel for plaintiffs had previously offered to settle all plaintiffs' claims against both State Farm and Worthy for $700,000.00. Exhibit F hereto at 1, letter from Phillip Weidner to Christine Schleuss, dated December 8, 1999. The settlement ultimately reached was for $550,000.00 with State Farm alone. Exhibit A to plaintiffs' Complaint, at 5. The difference between $700,000.00 and $550,000.00, i.e., $150,000.00 is nowhere near $1.5 million. American Home should not be precluded from contesting coverage under its policy.
[12] American Home's policy states:

> No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, and until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Exhibit G hereto, American Home Errors and Omissions Insurance policy, at page 3, Conditions ¶ 8.
[13] Assuming for the purpose of this reply, a tender letter was mailed to an address for American Home and that the letter was received at that address, that does not create a genuine issue of material fact relevant to this element of estoppel or other elements of estoppel that plaintiffs have the burden to establish with facts. As to the first element, plaintiffs have presented no facts to suggest American Home acted improperly.
[14] Exhibit C hereto at page 2, "Agents Errors and Omissions.
[15] *Id*.

Because plaintiffs have not established either that American Home intended its actions to be relied upon or that Worthy had a right to believe American Home intended its actions to be relied upon, plaintiffs have failed to establish this necessary element of estoppel.

Third, Worthy was not ignorant of the true facts, but rather was in a much more enlightened and advantageous position than American Home. Worthy was actively involved in the defense of both the criminal prosecution and the subsequent civil action against him. Plaintiffs have thus failed to establish this necessary element of estoppel.

Finally, and most importantly, Worthy did not rely on American Home to any degree and Worthy sustained no injury from American Home's failure to receive a tender letter. It is well established that "estoppel requires reliance by the insured on the insurer's actual or implied indications that it will not enforce some right"[16] and that the party asserting estoppel must establish that it was prejudiced:

> Prejudice is essential to estoppel, because the theory of the principle is that the party is estopped in order to prevent the harm or prejudice which would befall the other party were he or she not entitled to rely on the impression created by the actor. Thus, it has been declared that a necessary and essential element of estoppel is that the party claiming it must have been injured, or prejudiced, or his or her interest adversely affected in a substantial manner, or that such result will follow if estoppel is not invoked.[17]

As previously noted, Worthy was fully defended by competent counsel, and State Farm paid Worthy's legal defense costs.[18] In addition, Worthy's counsel believed there was no coverage

---

[16] *Couch on Insurance 3d*, § 239:96, citing *St. Paul Fire and Marine Ins. Co. v. Molloy*, 420 A.2d 994, 996 (Md. Ct. Spec. App. 1980), rev'd on other grounds, 291 433 A.2d 1135 (Md. 1981).

[17] *Couch on Insurance 3d*, § 239:12; *see also Hancock v. New York Life Ins. Co.*, 899 F.2d 1131, 1135-36 (11th Cir. 1990) (affirming summary judgment for insurer on estoppel claim because insureds could not "demonstrate that they suffered some detriment as the result of their reliance on [insurer's] words or deeds"); *State Farm Fire & Cas. Ins. Co. v. Ortiz*, 560 So.2d 1350, (Fla. Dist. Ct. App. 3d Dist. 1990) (reversing judgment for insureds and ruling insureds could not prove estoppel where they could not show reliance to their detriment on insurer's representation that a higher monetary limit applied than actually did; although insureds argued policies with the higher monetary limit were available from another insurer, insureds failed to present proof they would have, or could have qualified for and secured such coverage).

[18] Exhibit B at 1.

under Worthy's errors and omissions policy.[19]  Because Worthy had legal defense provided by State Farm and because his counsel believed there was no coverage under the errors and omissions policy, there was no reason for further contact with American Home, including to determine whether American Home had received the tender letter, or whether American Home had accepted or rejected tender of Worthy's defense.  Worthy could not have sustained an injury because he was represented by competent counsel at the expense of another insurer.  Therefore, plaintiffs have not established this necessary element of an estoppel claim.  There was no harm to Worthy; therefore, American Home committed no foul.  Because Worthy suffered no damages from defense costs, he had no rights in that regard to assign to plaintiffs.  Accordingly, the Court should reject plaintiffs' argument that American Home should be estopped from denying coverage.

Because plaintiffs seek estoppel as assignees of Worthy's rights, plaintiffs can have no greater rights than Worthy had and must stand in the shoes of Worthy.  *Fellows v. Tlingit-Haida Regional Elec. Auth.*, 740 P.2d 428, 432 (Alaska 1987).  Further, because plaintiffs seek an equitable remedy through their assignment from Worthy, both their conduct and Worthy's must meet the requirement that "he who seeks equity must do equity."  *See Lundgren v. Nat'l Bank of Alaska*, 756 P.2d 270, 276 (Alaska 1987); *Nat'l Bank of Alaska v. J.B.L. & K of Alaska, Inc.*, 546 P.2d 579, 589 (Alaska 1976).  Worthy failed to comply with the designated claim reporting procedures, explicitly stated in instructions for claim reporting.[20]  Plaintiffs have not disputed that fact.  As stated in Exhibit C, Worthy was required to report claims according to explicit instructions.[21]  Plaintiffs have not established Worthy followed the designated claims reporting instructions.  Worthy's claim reporting instructions also instructed Worthy in bold-face type "**Do**

---

[19] *Id.*
[20] Exhibit C at 2.
[21] *Id.*

**not send an Errors and Omissions claim form directly to American Home**."[22] Neither Worthy nor plaintiffs contacted American Home to determine whether American Home had received the letter or was going to accept Worthy's tender.[23] For all these reasons, the Court should deem the equitable remedy of estoppel unavailable to plaintiffs.

Plaintiffs rely heavily on the Alaska Supreme Court decision in *Sauer* to try to gin up coverage where none exists through estoppel. *Sauer v. Home Indem. Co.*, 841 P.2d 176 (Alaska 1992). Also important in Alaska case law on estoppel is the Alaska Supreme Court's decision in *Lloyd's*. *Lloyd's & Inst. Of London Underwriters Cos. v. Fulton*, 2 P.3d 1199 (Alaska 2000). The facts in this case are nothing like the facts in those cases. In *Sauer*, the insurer hired an independent adjuster to investigate a claim; there is no evidence of that here. In *Sauer*, the insurer hired coverage counsel and reached a coverage position. Again, there is no evidence of such conduct in the case at issue. But, in *Sauer*, the insurer had its investigator close its file, and it did so as well, without ever telling the insured its coverage position. *Sauer v. Home Indem. Co.*, 841 P.2d at 179. In fact, it <u>never</u> told the insured of its position <u>for five years</u>. *Id*.

Here, plaintiffs have failed to establish: American Home ever became aware of the lawsuit against Worthy; American Home ever opened a claim file regarding the lawsuit against Worthy; or American Home ever had a chance to hire coverage counsel or reach a coverage position. The egregious behavior of the insurer in *Sauer* is inapplicable to the instant case because unlike that insurer, American Home did not behave in bad faith.

Nor is this case anything like *Lloyd's*. In *Lloyd's*, the insured tendered a claim to the insurer, which plaintiffs have not established occurred in this case. An obvious coverage issue was recognized immediately – whether the incident on the high seas had occurred within the

---

[22] *Id*.
[23] The tender letter was not sent by certified or registered mail or by the designated claim channels stated in the claim reporting instruction Worthy had.

14

coverage area. *Lloyd's v. Fulton*, 2 P.3d at 1201. The insurer investigated the facts and decided that there was probably no coverage. But rather than informing the insured, the insurer hired a coverage attorney and had a draft reservation of rights letter prepared, but did not send it to the insured. *Id*. The injured party then sued the insured and the insured obtained counsel. The insurer continued its coverage investigation through a private investigator hired by its own coverage counsel. That investigator then questioned the insureds about the facts to build a case against the insured – even though the insured was represented by counsel – all without letting the insured even know that a coverage decision had been made or letting his counsel know that his clients were being interviewed. *Id*. As the trial court put it, the insurance company "continued to investigate, covertly building a case against the insured, without the presence of counsel." *Id*. at 1207. Finally, more than a month after drafting the reservation of rights letter, the insured was informed of the insurer's coverage position. *Lloyd's* is limited to its facts, showing egregious bad faith; therefore, the decision is inapplicable to the case at issue.

Here, there is no evidence American Home even had a chance to perceive a coverage issue like that at issue in *Lloyd's*. Plaintiffs have failed to establish: American Home hired coverage counsel to determine whether coverage existed; American Home reached a coverage determination or drafted a reservation of rights letter (without sending the letter), as the insurer did in *Lloyd's*. Further, plaintiffs have failed to establish American Home hired a private investigator to covertly interview insured to obtain prejudicial information, as did the insurer in *Lloyd's*. This case is further distinguishable from *Lloyd's*, because the limit of coverage to "professional services" is much clearer than the "imprecisely defined geographical coverage of the policy" at issue in *Lloyd's*. *Id*. at 1201. The egregious behavior of the insurer in *Lloyd's* is inapplicable to the instant case because unlike that insurer, American Home did not behave in bad faith

15

On extreme facts showing bad faith, the Alaska Supreme Court has held estoppel could be applied due to multiple flagrant violations of the insurer's duties. The Court specifically found that, once an insurer believes there are coverage issues, it cannot keep getting information from the insured without first notifying it of those issues. Further, because the insurer in *Lloyd's* "continued to investigate, covertly building a case against the insured, without the presence of counsel," it found that the insurer "had impaired the [insured's] right to a conflict-free defense at an earlier stage of the process by precluding [the insured's] attorney from participating during [the investigator's] interview [of the insureds] about coverage." *Id*. at 1207-08. Based on these two serious violations of contract and trust, the court found the insurer's breach of the duty to defend was a material breach that estopped a denial of coverage, unless the breach had "no adverse impact on the relationship between the insurer and the insured." *Id*. at 1209.

These cases do not stand for the extreme proposition that any alleged breach of the duty to defend estops an insurer from denying coverage. Estoppel was founded on highly egregious conduct far worse than an alleged breach of the duty to defend. Alaska law has long recognized that the duties to defend and indemnify are separate contractual duties and that an insurer's breach of the duty to defend does not mandate a finding of a duty to indemnify. *See e.g., Afcan v. The Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 647 (Alaska 1979). In fact, three years after *Lloyd's* was decided, the Alaska Supreme Court reiterated this very principle in *Great Divide*. *Great Divide Ins. Co. v. Carpenter*, 79 P.3d 599, 606 (Alaska 2003). There, insurers had denied any duty to defend or indemnify, and as here, the insured settled with the plaintiff. That plaintiff then sued the insurer as an assignee. The court found that the "insurers are not precluded from litigating the defenses they relied on in denying coverage, or reserving their rights to

disclaim coverage, or other issues pertaining to whether they have breached their obligations." *Id*. at 609.

Here, American Home did not breach any duty to Worthy. The allegations in plaintiffs' Complaint in the underlying case did not potentially trigger coverage under Worthy's errors and omissions policy, because the allegations of sexual assault against a former girlfriend did not involve Worthy's "professional services … as an insurance agent." Moreover, even if plaintiffs' allegations had potentially triggered coverage, coverage would have been excluded because the policy did not provide coverage for claims arising out of criminal or malicious conduct, bodily injury or property damage.

Unlike the insurers in *Sauer* and *Lloyd's*, American Home neither behaved in bad faith nor prejudiced the rights of the insured.[24] There is no evidence American Home concealed any position that the insured was not covered, like the insurer in *Sauer*. Nor is there evidence that American Home covertly investigated facts to build a case against Worthy without telling him of its coverage position, like the insurer in *Lloyd's*. In fact, American Home is the truly disadvantaged party in this case. In contrast, Worthy received legal defense from competent counsel at the expense of another insurer.[25]

Plaintiffs have failed to establish the elements of estoppel exist in this case. None of those elements exist. Most important, Worthy sustained no injury by the alleged failure to defend because he was represented by competent counsel provided by another insurer, and because the case against him was dismissed without his incurring any settlement costs.[26] In failing to establish

---

[24] Exhibit E at paragraphs 5 and 7, page 3; paragraph 10, page 6.

[25] Exhibit B at 1.

[26] Because Worthy was represented by competent counsel provided at no expense to him, and because Worthy sustained no settlement costs in the Resolution Agreement and Assignment dismissing the civil action against him, Worthy sustained no injury as a result of the alleged failure to defend. Thus, Worthy had no rights to assign to plaintiffs against American Home. Plaintiffs, standing in Worthy's shoes, cannot assert a stronger claim than that assigned to them by Worthy. The Resolution Agreement and Assignment was an easy way out of the case for

the elements of estoppel, plaintiffs have failed to meet their burden to establish a genuine issue of material fact, necessary to survive summary judgment. Plaintiffs have presented no evidence from which bad faith by the insurer could be inferred. Because plaintiffs have not even presented a scintilla of evidence showing either the elements of estoppel or the existence of bad faith, Fed. R. Civ. P. 56(c) "mandates the entry of summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. at 322-23, 106 S.Ct. at 2552. Thus, the Court should rule American Home is not estopped from denying coverage, and that American Home is entitled to judgment as a matter of law.

## CONCLUSION

The Court should grant American Home summary judgment because: (1) plaintiffs have failed to contradict that the insured's sexual assault on a former girlfriend was not a "professional service" and thus was not within the grant of coverage; (2) plaintiffs have failed to contradict that the insured's sexual assault against a former girlfriend was not criminal or malicious conduct involving bodily injury or property damage and was thus excluded from coverage; (3) plaintiffs cannot manufacture coverage by estoppel when the errors and omissions insurance policy did not cover the allegations against the insured; and (4) plaintiffs have failed to establish the elements of estoppel or to produce legal authority showing American Home should be estopped from denying coverage in the absence of a scintilla of evidence showing bad faith. For all these reasons, the

---

Worthy. He incurred no defense costs and was required to pay nothing in settlement. All he had to do was sign a document stating he assigned his rights against American Home. Worthy had no rights against American Home. He had no rights under his policy to assign. Worthy's attorney had told him American Home's policy excluded the allegations in the underlying Complaint.

Court should grant American Home summary judgment at this time and should dismiss all claims against American Home with prejudice.

DATED at Anchorage, Alaska this 20th day of March, 2006.

> DELANEY WILES, INC.
> Attorneys for Defendant
> American Home Assurance Company
>
> s/Andrew Guidi
> ag@delaneywiles.com
> 1007 West Third Avenue, Suite 400
> Anchorage, Alaska 99501
> P: 907-279-3581/F: 907-277-1331

**Certificate of Service**

I hereby certify that on the 20th day of March 2006, a copy of the foregoing **AMERICAN HOME ASSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** was served electronically on:

Phil P. Weidner, Esq.
Phillip Paul Weidner & Associates
330 L Street, Suite 200
Anchorage, Alaska 99501

s/Andrew Guidi (115079)