Andrew Guidi
ag@delaneywiles.com
DELANEY WILES, INC.
1007 West Third Avenue, Suite 400
Anchorage, AK 99501
 (907) 279-3581
 (907) 277-1331 fax
*Attorneys for Defendant*
*AMERICAN HOME ASSURANCE COMPANY*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA AT ANCHORAGE

| | |
|---|---|
| TJ IVEY, RENEE M. CROUSE, BRIAN J. CROUSE, and JESSICA LYNN SKEEN,<br><br>            Plaintiffs,<br><br>vs.<br><br>AMERICAN HOME ASSURANCE COMPANY,<br><br>            Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. A03-0202-CV (TMB)

**AMERICAN HOME ASSURANCE COMPANY'S OPPOSITION TO MOTION REQUESTING PERMISSION TO FILE SUPPLEMENTAL BRIEFING**

**I.      INTRODUCTION**

The Court should deny leave for supplemental briefing because plaintiffs seek a second "bite at the apple" without having shown any new facts, documents, or case law not available to them when they filed their opposition. Even if the Court considers plaintiffs' supplemental opposition, it fails to establish a genuine issue of material fact. Therefore, the Court should grant American Home's Motion for Summary Judgment.

1

American Home Assurance Company's ("American Home") Memorandum supporting Summary Judgment ("Memorandum") established that the insured's sexual assault against a former girlfriend did not constitute a "professional service" and thus was not within the grant of insurance coverage; and that the sexual assault constituted criminal or malicious conduct involving bodily injury or property damage and thus was excluded from coverage. Plaintiffs' opposition failed to raise a genuine issue of material fact. Plaintiffs' opposition consciously ignored the coverage arguments and deliberately focused solely on the contention that American Home should be estopped from denying coverage because of an issue as to whether American Home had received a so-called "tender" letter. In reply, American Home established that regardless of the alleged tender an insured cannot create coverage by estoppel when there is no coverage under the policy, which plaintiffs – despite their burden to do so – had utterly failed to demonstrate. Furthermore, plaintiffs – who also bear the burden of proof on estoppel – had failed to offer any legal authority that American Home should be estopped or otherwise establish any of the elements of estoppel.

In light of this history, plaintiffs lack any valid grounds under Local Rule 7.1(h) for filing a supplemental brief. Contrary to their assertion, the estoppel issue was *not* raised for the first time in American Home's reply brief. American Home's *initial* brief raised, and dismissed, the question of estoppel, and its reply merely rebutted the arguments made in plaintiffs' opposition.

## II.    ARGUMENT

**A.    The Court should deny Plaintiffs leave to file supplemental briefing because plaintiffs have failed to show any new facts, documents, or case law that was not available to plaintiffs when they filed their opposition**

The Court should deny plaintiffs leave to file supplemental briefing because plaintiffs have failed to show any new facts, documents, or case law not available when they filed their

opposition that requires the Court to grant leave for supplemental briefing. Rather, plaintiffs blithely dismissed all American Home's coverage arguments when they could have and should have addressed them in their opposition. Now, plaintiffs are belatedly scrambling to shore up their opposition by seeking a "second bite at the apple." But plaintiffs have failed to show any reason the Court should grant them leave to file a supplemental brief. Granting leave to file supplemental briefing would prejudice American Home, and would subvert the finality of pleadings, Fed. R. Civ. P. 56 and Local Rule 7.1.

Contrary to plaintiffs' assertion, American Home did not argue the inapplicability of estoppel for the first time in its reply brief. In fact, American Home argued in its original Memorandum that estoppel could not apply in this case. *See* Memorandum at 40-41 (docket number 20). The thrust of American Home's Memorandum was that, even assuming *arguendo* receipt of the so-called tender letter, there was nevertheless no possibility of coverage because: (i) the errors and omissions policy provided coverage only for negligence in rendering the professional services of an insurance agent; and (ii) the policy excluded claims arising from criminal acts, malicious acts, bodily injury, or property damage. American Home anticipated plaintiffs' argument that estoppel should apply and addressed that argument in its Memorandum. American Home argued that Alaska case law finding an insurer estopped from denying coverage based on an exclusion did not apply in the instant case. American Home distinguished the instant case from *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992). American Home argued: "Unlike such cases in which courts have ruled an insurer had a duty to defend despite a possibility that coverage for the claim was excluded, in this case, the criminal act, malicious act, bodily injury, and injury to property exclusions completely precluded any potential for coverage of the

claim arising out of Worthy's assault, sexual assault, and malicious vandalism of his former girlfriend's automobile." *See* Memorandum at 41 (docket number 20).

All of this was set forth in American Home's opening Memorandum. Hence, plaintiffs' assertion that American Home raised the estoppel argument for the first time in its reply brief is woefully inaccurate. American Home's reply brief contained no surprise factual or legal assertions. What plaintiffs have called an argument raised for the first time in American Home's reply brief is merely rebuttal of plaintiffs' contention that American Home should be estopped. Relying on the *Sauer* case cited in American Home's opening Memorandum, plaintiffs argued in their opposition that "an insurer is precluded from later arguing that coverage under the policy does not exist" when an insurer denies coverage without communicating the basis for its decision. *See* Plaintiffs' Opposition to Summary Judgment at 2-3 (Docket number 25). American Home's reply brief took this argument head-on. Clearly, if a party opposing summary judgment raises arguments that are fallacious and unsupported in its opposition brief, the party seeking summary judgment is entitled to point that out to the Court in its reply.

Plaintiffs' supplemental opposition actually goes far beyond the scope of their alleged justification. Plaintiffs claim they need to respond to a (not so) newly raised argument that coverage cannot be created by estoppel. Contrary to their claim, however, plaintiffs' supplemental brief devotes more attention to the coverage arguments raised in American Home's initial Memorandum than to the estoppel argument. Plaintiffs had a full and fair opportunity to address the coverage issues in their original opposition, and they have not sought a continuance to obtain additional discovery. Plaintiffs are not entitled to continue heaping additional briefs upon the Court simply because they perceive their initial attempt requires reinforcement. Local Rule 7.1 was not intended to serve such a function.

The Court should also deny leave to file supplemental briefing because there are no new materials that were not available to plaintiffs when they filed their opposition, and because the pertinence of all materials was known to plaintiffs when they filed their opposition. Local Rule 7.1(h)(2) provides:

> [L]eave to supplement will not be routinely granted. The Court will consider, among other things – (i) whether the material was available to the party when briefs were due, and (ii) whether the pertinence of the material was established at the times for briefing.

Plaintiffs have failed to offer any new facts or case law unavailable to them when they first opposed American Home's motion. The *only* material plaintiffs have presented that was not included in their original opposition is an "Entry of Verdict and Findings and Judgment" entered by Judge Reese on November 14, 2003. As evidenced by the fact that plaintiffs' counsel signed it (and, presumably, drafted it), plaintiffs have had this document for over two years, so it can hardly support expanded briefing. Moreover, this document represents merely a "lay down" judgment entered into in a non-adversarial proceeding. The only parties to this lay down judgment were plaintiffs and Conrad Worthy, who was settling with plaintiffs for an assignment of rights against American Home. The judgment was entered between parties with no genuine adversity.[1]  By the time the judgment was essentially stipulated to, Ivey and Worthy had already entered into a

---

[1] Moreover, the Court should note Worthy's errors and omissions policy required that, before an action could lie against American Home, the insured's obligation to pay must be finally determined after an actual trial, or by written agreement of the insured, the claimant, and American Home. Specifically, the policy provided: "Action Against the Company. No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all the terms of this policy, and until the amount of the Insured's obligation to pay shall have been finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company." *See* Exhibit M to Memorandum (Docket number 20).

settlement agreement.[2]  Thus, not only is the lay down judgment not entitled to any preclusive effect, it constitutes an entirely self-serving record not entitled to any weight.[3]

Because plaintiffs failed to present legal support sufficient to oppose American Home's Motion for Summary Judgment, the Court should deny leave to file supplemental briefing. The Court may properly deem plaintiffs' failure to provide such legal authority as an admission that American Home is entitled to summary judgment. The Motion is ripe. Plaintiffs have had an opportunity to oppose the Motion. Indeed, plaintiffs have even argued their case to the Court at the status conference on Monday, April 3rd. Plaintiffs have not met any of the criteria of Local Rule 7.1(h)(2), therefore their motion for leave to supplement the briefing should be denied.

**B.    The Court should grant summary judgment because plaintiffs' supplemental brief fails to establish any genuine issues of material fact.**

Plaintiffs' attempt to oppose the coverage arguments American Home presented in its initial Memorandum contradicts plaintiffs' assertion that supplemental briefing is necessary to address a newly raised estoppel argument. Nevertheless, plaintiffs' supplemental brief fails to establish any genuine issues of material fact precluding summary judgment for American Home. Assuming, for purposes of American Home's Motion, that American Home received the so-called tender letter, American Home remains entitled to judgment as a matter of law because: (i) there was no possibility of coverage under the errors and omissions policy; (ii) an insured cannot create

---

[2] Exhibit A hereto, Resolution Agreement and Assignment, May 17, 2001.

[3] Moreover, the lay down judgment plaintiffs have attached to their pleading does not even relate to the estoppel argument, which plaintiffs assert as the reason for their need to file supplemental briefing. The purported findings of fact relate only to coverage arguments presented by American Home in its original Memorandum. Plaintiffs have had a sufficient opportunity to respond to American Home's Memorandum, especially in light of American Home's granting plaintiffs an extension of time to oppose the Motion for Summary Judgment. *See* Stipulation for Extension of Time to Respond to Defendant's Motion for Summary Judgment (docket number 23). Plaintiffs have failed to do so and have not demonstrated any valid basis for the Court granting leave to file supplemental briefing.

coverage by estoppel; and (iii) plaintiffs have failed to establish any basis, either in law or under the uncontradicted facts, for applying estoppel to American Home.

### 1.     There was no possibility of coverage under the errors and omissions policy

In order to trigger a duty to defend, there must be alleged a cause of action within, or potentially within, the policy coverage. *Afcan v. Mutual Fire, Marine and Inland Ins. Co.,* 595 P.2d 638, 645 (Alaska 1979). The incontrovertible facts of the case establish that there was no possibility that the claims against Worthy were covered under his errors and omissions policy. Worthy's errors and omissions policy provided coverage only for claims arising out of "[a]ny negligent act, error or omission in rendering or failing to render professional services … in the insured's capacity as an Insurance Agent" for State Farm.[4] Worthy's own attorney, Christine Schleuss, believed the errors and omissions policy did not provide coverage.[5] Long before Ivey's civil suit against Worthy and Worthy's alleged tender, Conrad Worthy had been convicted of criminal conduct as a result of his sexual assault against a former girlfriend in the middle of the night. *See Worthy v. State*, No. A-5970, 1997 WL 502280, at *1 (Alaska App. Aug. 20, 1997). After the Alaska Supreme Court had reversed Worthy's conviction and remanded for retrial,[6] Worthy pleaded guilty to fourth-degree Assault and fourth-degree Criminal Mischief.[7] Therefore, this motion does not hinge on questions of fact for a jury. The plaintiffs have failed to raise a genuine issue of material fact precluding summary judgment for American Home.

---

[4] Exhibit M to Memorandum at 1 (Docket number 20).
[5] Exhibit C to Memorandum at 1 (Docket number 20).
[6] *Worthy v. State*, 999 P.2d 771, 773 (Alaska 2000)(reversing Worthy's conviction for second-degree sexual assault and remanding).
[7] Exhibit B to Memorandum at 1-2 (Docket number 20).

Worthy previously submitted his affidavit as part of the underlying civil action plaintiffs brought against State Farm (for which plaintiffs received $550,000.00[8]). In his affidavit, Worthy stated:

> Employment decisions, including offers, hires and terminations were not within the scope of my duties as an insurance agent and were not governed in any way by State Farm. [9]

Worthy's statement that employment decisions were not within the scope of his duties as an insurance agent disposes of plaintiffs' argument that "professional services" should be interpreted to include the actions at issue in this case. Assuming *arguendo* that the term "professional services of an insurance agent" is ambiguous, the Court must interpret the term reasonably.[10] *See Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290-91 (5th Cir. 2001) ("Although ambiguous provisions in insurance policies must be strictly construed … this rule … does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.") (quotation omitted). A reasonable interpretation of the term "professional services" cannot construe sexual assault against a former girlfriend as being within the professional services of an insurance agent.

Plaintiffs' argument that there could even potentially be coverage for the sexual assault against a former girlfriend in the middle of the night is baseless. First, as American Home established in its Memorandum, an insurance agent's errors and omissions policy does not provide coverage for "non-professional business activities which 'set the stage for performance' but which do not involve professional services to clients and are not themselves acts 'inherent in the practice

---

[8] Exhibit A hereto at 5.
[9] Exhibit B hereto at 4, ¶ 17, a true and correct copy of the affidavit of Conrad J. Worthy, dated August 25, 2000, and filed in state court in the underlying civil suit, T.J.S. v. State Farm Insurance Company, 3AN-96-6147 Civil.
[10] *See Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290-91 (5th Cir. 2001) ("Although ambiguous provisions in insurance policies must be strictly construed … this rule … does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists.") (quotation omitted).

of [the] particular profession' – underwriting". *Propis v. Firemen's Fund Ins. Co.*, 492 N.Y.S.2d 228, 231 (N.Y. App. 1985); *see also American Motorists Ins. Co. v. Republic Ins. Co.*, 830 P.2d 785, 787 (Alaska 1992) (the term "professional services" includes only those acts "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor or skill…"). Second, it is against public policy to insure against intentional conduct. *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 460 (N.Y. 2002); *see also Dairy Queen v. Travelers Indem. Co.*, 748 P.2d 1169, 1172 (Alaska 1995) (noting numerous jurisdictions have held there can be no insurance coverage for intentional acts). Third, plaintiffs have failed to support their factual assertion that Worthy's sexual assault against a former girlfriend was somehow in the scope of "administration of his insurance business." *See* Plaintiffs' Supplemental Pleading at 18. It is not even arguable that Worthy was conducting the professional services of an insurance agent when he sexually assaulted his former girlfriend, after having taken her out to dinner with friends, in the middle of the night.[11] Therefore, the Court should dismiss plaintiffs' arguments that any genuine issue of fact precludes summary judgment for American Home. Plaintiffs have failed to present any basis in fact or law on which Worthy could have potentially been entitled to coverage under the errors and omissions policy.

The case law cited by plaintiffs fails to support coverage. For example, plaintiffs cite *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1056 (Pa. Sup. Ct. 1992) for the proposition that a Pennsylvania intermediate appellate court has ruled that where a professional liability policy did not define "professional services," that phrase is ambiguous and should be construed against the insurer. In *Biborosch*, the court considered whether the manager of a general insurance agency was engaged in professional services when, in conjunction with his employer, Penn, (Penn Mutual

---

[11] *See* Plaintiffs' First Amended Complaint in the underlying civil suit, (dated December 11, 1997), Case No. 3AN-96-6147 Civil, page 7; *see also Worthy v. State*, 999 P.2d at 772-73.

Life Insurance Company and Penn Insurance and Annuity Company) he terminated an employee because he and Penn became convinced the employee was replacing Penn policies with those of a competitor. *Id*. at 1051. *Biborosch* is distinguishable because rewriting insurance policies relates directly to transacting insurance coverage, whereas Worthy's sexual assault against a former girlfriend had nothing to do with transacting insurance.

In the absence of any covered claim, American Home had no duty to defend Worthy and plaintiffs' assertion that American Home may have received a so-called tender letter is immaterial. Because the professional services insuring clause and the exclusion for criminal and malicious acts, bodily injury and property damage prevented any possibility of coverage, American Home had no duty to defend. This is particularly true in light of the uncontested fact that State Farm was already defending Worthy in the underlying civil action.

### 2.     An insured cannot create coverage by estoppel

As established by American Home in its reply brief, an insured cannot create coverage by estoppel. Plaintiffs have failed to present any case law for the proposition that a failure to deny coverage can result in a grant of insurance coverage where there is otherwise none.

In its reply brief, American Home cited highly persuasive case law from New York, stating the proposition that estoppel, or the closely-related issue of waiver, cannot expand an insurer's grant of coverage. *See* Reply Brief at 5 (Docket number 30). In their supplemental pleading, plaintiffs have cited *Allstate Ins. Co. v. Macaluso*, 628 N.Y.S.2d 701 (N.Y. App. Div. 1995) for the proposition that an unreasonable delay in disclaiming coverage can result in estoppel or waiver. Not only does plaintiffs' argument fail to rebut American Home's argument that New York law soundly supports the above proposition, but the case law cited by plaintiff does not even consider the estoppel issue. The *Macaluso* court relied on the New York Insurance Code's

10

requirement that an insurer intending to deny coverage regarding a motor vehicle accident must do so as soon as possible. *See Allstate Ins. Co. v. Gross*, 317 N.Y.S.2d 309, 310-11 (N.Y. 1970)(on which the *Macaluso* court relied for its finding that the insurer had unreasonably delayed disclaiming coverage.) That proposition has no bearing on the instant case because unreasonable delay is not at issue.

In addition, plaintiffs cite *Clark v. Union Mut. Life Ins. Co.*, 692 F.2d 1370, 1374 (11th Cir. 1982) for the proposition that, under New York law, estoppel can prevent an insurer from asserting valid defenses or exclusions. The *Clark* case has no pertinence to the case at bar because it involved an insurer's reliance on an exclusion in a master policy that was not present in the insured's certificate of insurance. *Id*. at 1371. Unlike in *Clark*, here, the professional services insuring clause and the criminal and malicious act, bodily injury, and property damage exclusion clauses were all present in Worthy's errors and omissions policy. Moreover, the *Clark* case relied on New York Insurance Code § 162(1)(f), which provided that an insurer must include in each certificate of insurance the essential information included in the master policy. *Id*. at 1373. As a result, the *Clark* case does not contradict American Home's argument that New York case law follows the majority trend that an insured cannot create coverage by estoppel.

The Unfair Claim Settlement Practices Act ("Act") does not further plaintiffs' estoppel argument. The Act does not provide that an insurer is estopped from denying coverage. The Act does not even address the circumstances in this case; rather it assumes a situation where an insurer has indisputably received tender. Moreover, the Act does not state that an insured who has committed criminal and malicious acts should prevail over an insurer who has committed, at most, a violation of a technical provision of the Insurance Code, particularly when the insurance policy does not even provide coverage. Finally, the Act states the regulatory duties of an insurer, a

11

violation of which can give rise to an action by the Director of the Department of Insurance. However, the Act does not create a private cause of action. *O.K. Lumber, Inc. v. Providence Washington Ins. Co.*, 759 P.2d 523, 526-27 (Alaska 1988) ("We therefore conclude that a third party claimant has no cause of action against an insurer under [the Unfair Claim Settlement Practices Act]").

The Court should follow the case law cited by American Home in its reply brief. The Alaska Supreme Court has noted: "[i]t is a general rule of insurance law that "(t)he doctrine of waiver … does not pertain to matters of coverage so as to extend the scope of the contract beyond its express terms…" *Mountain View Sports Center, Inc. v. Commercial Union Assurance Co.*, 599 P.3d 1382, 1386 (Alaska 1979). Moreover, numerous United States Courts of Appeal and state appellate courts have ruled an insured cannot expand the original grant of insurance coverage under an estoppel argument.[12] Accordingly, the Court should reject plaintiffs' attempt to create coverage by estoppel where none exists under the clear terms of the errors and omissions policy.

3.  **Plaintiffs have failed to establish any basis, either in law or under the uncontradicted facts, for applying estoppel to American Home**

As distinct from a grant of coverage, which cannot be created by estoppel, under certain circumstances, an insurer's conduct may estop that insurer from relying on a policy exclusion to deny coverage. The incontrovertible facts in the present case fail to establish any such circumstances.

Regardless whether American Home received the so-called tender letter, plaintiffs have failed to establish that estoppel should apply. Plaintiffs have failed even to address the elements of estoppel, much less to show they existed.[13] Most important, plaintiffs have failed to prove Worthy was injured by American Home. It is impossible for Worthy to have sustained harm

---

[12] *See* cases cited in American Home's Reply Brief at 3-7 (Docket number 30).
[13] *See* American Home's Reply Brief at 8-13 (Docket no. 30).

because of any action by American Home because Worthy was already being defended by competent counsel provided by State Farm.[14]  Accordingly, the Court should reject plaintiffs' argument that American Home should be estopped.

Contrary to plaintiffs' assertion that American Home had a duty to reply to the so-called tender letter and defend Worthy, Worthy did not report the Ivey claim as required by his errors and omissions policy.  State Farm agents were required to report a claim under the errors and omissions policy directly to State Farm.[15]  Worthy's policy instructed him in bold-faced type: **"Do not send an Errors and Omissions claim form directly to American Home."**[16]  But, Worthy's attorney, Ms. Christine Schleuss, who did not believe the errors and omissions policy covered the allegations of sexual assault against Worthy's former girlfriend, did not follow up with American Home regarding whether American Home would accept tender.[17]

Worthy's failure to tender a claim as required under the errors and omissions policy contributed to any lack of response by American Home.  Despite diligent searches for any record of receipt of the so-called tender letter, American Home has found no record of having received it.  Therefore, the Court should disregard plaintiffs' argument that American Home failed to respond, as required by the "three forks in the road."  That argument cannot apply in this case because Worthy failed to tender as required by his policy, and failed to tender in a way American Home would receive the so-called tender letter.  In fact, Worthy submitted the so-called tender letter just as the insurance policy required him not to.

Assuming Worthy had tendered as required under the policy, plaintiffs could, at best, allege American Home failed to respond.  However, even if Worthy had properly tendered his

---

[14] Exhibit C to Memorandum at 1 (Docket number 20).
[15] Exhibit F to Memorandum at 2 (Docket number 20).
[16] *Id.*
[17] Exhibit C to Memorandum at 1 (Docket number 20).

claim, plaintiffs could not prove a failure to defend because there was no coverage applicable to Ivey's claims. The Court should disregard plaintiffs' assertion that American Home failed to respond in this case because Worthy failed to properly tender.

### III.   CONCLUSION

The Court should deny leave for supplemental briefing because: (i) plaintiffs seek a second "bite at the apple" without having shown any new facts, documents, or case law not available to them when they filed their opposition; and (ii) plaintiffs' supplemental pleading fails to establish a genuine issue of material fact precluding American Home from summary judgment. For all these reasons, the Court should deny leave for supplemental briefing and grant American Home summary judgment at this time, dismissing all claims against American Home with prejudice.

DATED at Anchorage, Alaska this 17th day of April, 2006.

> DELANEY WILES, INC.
> Attorneys for Defendant
> American Home Assurance Company
>
> s/ Andrew Guidi
> ag@delaneywiles.com
> AK Bar No. 8312171
> 1007 West Third Avenue, Suite 400
> Anchorage, AK 99501
> Phone: (907) 279-3581
> Fax: (907) 277-1331

**CERTIFICATE OF SERVICE:**

I hereby certify that on the 17th day of April, 2006, a copy of the foregoing **AMERICAN HOME ASSURANCE COMPANY'S OPPOSITION TO MOTION REQUESTING PERMISSION TO FILE SUPPLEMENTAL BRIEFING** was served electronically on:

Phillip Paul Weidner
Michael Cohn
WEIDNER & ASSOCIATES, INC.
330 L. Street, Suite 200
Anchorage, Alaska  99501


s/Andrew Guidi (115845)