Phillip Paul Weidner
Weidner & Associates, Inc.
330 L Street, Suite 200
Anchorage, Alaska  99501
(907) 276-1200

Attorneys for Plaintiffs


IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TJ IVEY, RENEE M. CROUSE, BRIAN J. CROUSE, and JESSICA LYNN SKEEN, ) )<br><br>Plaintiffs, )<br><br>vs. )<br><br>AMERICAN HOME ASSURANCE COMPANY, )<br><br>Defendant. ) | Case No. 3:03-cv-0202-TMB |

## MOTION BY PLAINTIFFS FOR RULE 59 RELIEF

COME NOW the Plaintiffs, by and through counsel, and hereby move this Court for

relief under Rule 59(e) of the Federal Rules of Civil Procedure in light of the court's Order of

May 19, 2006 at docket 47 granting summary judgment to the defendant, and the Judgment in a

Civil Case filed May 22, 2006 at docket 48, on the grounds set out below.

### I.      INTRODUCTION AND SUMMARY

The Court should alter and vacate the judgment in this case insofar as:

1.   It is imperative that, before a final ruling on the issues before the Court, the record

be clarified as to the exact terms and conditions [and American Home Assurance

Company's (hereinafter "AHAC) internal company interpretation regarding same] of

*Weidner & Associates*
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

the applicable insurance policy issued by AHAC, as to AHAC's duties and obligations. As reflected by a companion motion herewith, its discovery responses in that regard have been evasive and incomplete and a Motion to Compel has been necessary and is being filed;

2.   In any event, given the applicable terms and conditions of the policy that has been produced, and the allegations of the Plaintiff in the underlying civil action against Mr. Worthy, there was and is in fact arguable coverage as a matter of fact, law, and allegation, and thus there was an absolute duty to defend[1].

3.   The Court's Order improperly focuses on certain causes of action pled by Ms. Ivey against Mr. Worthy, which may have been excluded (i.e. actual intention/criminal action) and ignores the fact that, not only (as found by Judge Reese) were causes of action pled as to which coverage would apply (negligent acts, sexual harassment, negligent sexual harassment, negligence tort of outrage, negligent intentional infliction of emotional distress) but likewise as noted that there was an actual verdict and judgment entered by Judge Reese as to same (Exhibits 1 and 2), which found tort/negligence culpability based upon torts/causes of action that were actually covered;

4.   The Court's Order misconstrues the law of estoppel under Alaska law, and in fact there is estoppel as a matter of law in this case since:

    A.   Under the applicable Alaska statute (AS 21.36.125) and the Alaska Administrative Code (3AAC 26.040 and .070) (Exhibit 12), there is a non-

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[1] Note that for purposes of the Motion for Summary Judgment and this Motion for Rule 59 Relief, the Court has correctly recognized that whether or not American Home received the tender letter is a disputed issue of fact. Accordingly, the relevant issues must be analyzed in terms of an actual receipt by American Home of the tender letter, which in turn implement a duty of written response, and duty to defend, and consequences for violation(s) of same, as discussed herein.

waivable duty of an insurance carrier to respond in writing to a tender, either agreeing to accept coverage, indemnification and defense obligations, or setting out specifically the terms and conditions under which coverage, indemnification or defense is being denied or reserved;

B.    The Court is incorrect and ignores the Alaska case of <u>Lloyd's & Inst. of London Underwriters Cos. v. Fulton</u>, 2 P.3d 1199 (Alaska 2000); where an insurance carrier has violated certain duties and obligations regarding defense to a policyholder, there is coverage by estoppel, <u>even as to coverage that would not exist under terms and conditions of the policies and the actual facts in the case</u>, i.e. there is coverage by estoppel in excess of the strict coverage under the terms and conditions of the policy and the facts.[2]

## II.    CONTROLLING LAW

The court does properly recognize that where an insurance company has notice of a claim pled against an insured which, <u>given the allegations in the complaint</u>, is arguably covered, and fails or refuses to defend, it is responsible for full coverage and indemnification. <u>See</u> <u>Sauer v. Home Indemnity Co.</u>, 841 P.2d 176, 184 (Alaska 1992).  Order at p. 4.  It is also hornbook Alaska law that, in terms of interpreting a policy, as to whether there is arguable coverage, since the insurance company drafts the policy, any ambiguities are construed against the insurance company, and, in light of such liberal construction, if there are any facts or causes of action pled, or facts or evidence that are reasonably available, that might show coverage, the

---

[2] The basic premise of <u>Lloyd's</u>, which this Court must recognize and apply (and has failed to do), as the Alaska Supreme Court has ruled as a matter of Alaska insurance law, is that a carrier should not be able to escape its estoppel obligations by being ultimately successful on an argument that there is in fact no coverage given the facts of the case, i.e., should not be able to escape its estoppel obligations by engaging in conduct detrimental to and/or in violation of its defense or indemnification duties and obligations to the policyholder under the statutes and policy, and then escape eventual coverage by "setting up" the policyholder or ignoring its duties or obligations, <u>even if in fact no coverage exists in the first instance</u>.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

insurance company has a duty to defend.  This includes the duty to defend as to any such claims, even if certain of the claims are clearly outside coverage.  It is likewise clearly established under the Alaska statutes that an insurance company has an absolute duty to respond in writing to a tender letter either agreeing to coverage, defense and indemnification, or delineating clearly why coverage and/or defense and/or indemnification are being declined or reserved.  See

AS 21.36.125; 3AAC 26.040, .070 (Exhibit 12).[3]


III.    WHEN THE POLICY IS ACTUALLY READ CORRECTLY UNDER THE LAW, THERE IS ARGUABLE COVERAGE AND A DUTY TO DEFEND AS TO CERTAIN CLAIMS PLED AGAINST MR. WORTHY AS FOUND BY JUDGE REESE.

        The court improperly focuses in its decision on the alleged criminal acts of Mr. Worthy, and his criminal (misdemeanor) convictions, to the exclusion of the other causes of action which were pled and for which coverage existed, as found by Judge Reese.[4]

        There can be no dispute, as found by Judge Reese, that there is significant evidence to show that the tortious conduct of Mr. Worthy against Ms. Ivey arose from her prior employment with him, his representations and offers to her regarding resuming employment in the business affairs of his insurance agency, and Mr. Worthy's attempts to induce her to work for him in his insurance business providing professional services (insurance), which attempts and potential job were intimately connected to his business, to wit, as a State Farm agent, and

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

---

[3] Note that this statute and administrative regulation, which codify common law, exemplify the "three forks in the road" doctrine, to wit, an insurance company, when faced with a tender letter must either (1) unequivocally deny defense coverage and indemnification and proceed at its peril, (2) acknowledge full coverage defense and indemnification and provide the resulting protection to the insured, or (3) seek permission of the insured to proceed under a contractual reservation of rights posture.  In this case, given the record, it appears that American Home Assurance did none of these, and ignored its duties and obligations, and therefore coverage exists both as a matter of fact and law and via estoppel.  Cf., CHI of Alaska, Inc. v. Employers Reinsurance Corp., 844 P.2d 1113 (Alaska 1993).

[4] The court states: "Worthy pled guilty to fourth-degree assault and criminal mischief."  Order at 2.  Irrespective of whether he may have been actually guilty of assault or criminal mischief, the fact remains that he was likewise subject to tort liability for the other covered causes of action.

therefore were intimately connected, via a business nexus, to his activities in providing

professional services to his clients.  As the court notes at p. 3 of its Order, "an insurer's duty to

defend arises when <u>any</u> part of the claim is arguably within the scope of the policy's coverage."

(Emphasis added.)  The court also properly cites <u>Sauer v. Home Indem. Co.</u>, 841 P.2d 176, 180

(Alaska 1992), for the black letter law proposition that the duty to defend is separate and apart

from the duty to indemnify.

   Ms. Ivey's complaint alleged at ¶¶ 11, 19, 20, 21 and elsewhere facts to show an

intimate connection (nexus) to Mr. Worthy's business and his attempts to induce her to work for

him, again to in turn assist his business operations to provide professional services to his

insurance clients.

   The allegations at ¶¶ 38 and 39 are of sexual harassment, with foreseeable

emotional distress, to wit, a negligence cause of action based on such business-connected facts

covered by the policy.  Arguably ¶¶ 40 and 41 plead a negligent assault claim, with a similar

business nexus.  Paragraphs 44 and 45 allege the tort of outrage which may be satisfied by

negligent conduct, and ¶¶ 46 and 47 allege negligent infliction of emotional distress both based

on facts connected (business nexus) to his attempts and efforts to hire Ms. Ivey in his business.

Significantly, Judge Reese found in his Entry of Verdict and Findings of Judgment in <u>T.J.S., et

al. v. State Farm, et al.</u>, Case No. 3AN-99-12032 Civ., actual liability for negligent conduct

based on Worthy's business-related acts in the scope of his employment.  (<u>See</u> Exhibit 1 to

plaintiffs' Supplemental Briefing; Exhibits 1 and 2 herewith; set out in more detail at p. 6, <u>et

seq.</u>, <u>infra</u>).  Accordingly, there was a clear duty to defend.

   The court cites to certain coverage language in the policy at p. 5 of its Order.

Significantly, the relevant consideration is the fact that the company has promised to

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

pay/indemnify "because of any claim or claims . . . <u>arising out of</u>: [a]ny negligent act, error or omission in rendering or failing to render professional services for others in the insurer's capacity as an insurance agent . . . and caused by the insured or any person for acts, errors or omissions the insured is legally responsible." AHAC policy at 1 (emphasis added). To wit, claims arising out of acts with a business nexus, i.e., acts with a nexus as to a business of providing professional services (i.e., insurance).

Accordingly, as long, as there is here, an allegation in the complaint as to any tortious acts by the named insured or an agent (which certainly includes Mr. Worthy), as to <u>any claims arising out</u> of his negligent act, error or omission as to rendering or failing to render professional services (to wit, as to acts with a nexus to his <u>business</u> of doing so), there is coverage. That test, as shown by the complaint, evidence and Judge Reese's findings, is met here.

Judge Reese's verdict and judgment was an <u>actual</u> verdict via court findings by a preponderance of the evidence. It incorporated by reference relevant stipulations and evidence [<u>see</u> Entry of Verdict and Judgment at p. 1, ¶ 1 (Exhibits 1 and 2)], and provided:

> 1.    The Stipulation(s) To: (1) Waiver of Jury Trial; (2) Admission of Appropriate Evidence; (3) Court Findings of Relevant and Appropriate Facts and Conclusions of Law Pursuant to Said Admitted Evidence at a Court Hearing/Trial; and (4) Entry of Judgment <u>are approved, and the Court so admits and considers the evidence, and so finds by a preponderance of the evidence, i.e., more likely than not, and so rules. Pursuant to same, a Jury Trial is waived, the Court admits and considers the referenced evidence and Exhibits, and the Court approves and finds and enters the referenced legal findings and rulings which are incorporated fully herein by reference, based on said evidence, on a preponderance of the evidence, i.e., more likely than not standard, and based on said findings, renders a verdict that the defendants Conrad J. Worthy Insurance Company and Conrad J. Worthy individually were negligent,</u> and said negligence breached a legal and factual duty to the plaintiffs as so stipulated and found and said breach was and/or will be a proximate cause and substantial factor in causing the damages and injuries of the plaintiffs as so stipulated and found. [Emphasis added.]

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

and in turn clearly established there were negligence, covered claims, as to Worthy's acts in his efforts to hire Ms. Skeen, said acts falling within the scope of his employment as to his provision of professional services. Thus, Judge Reese's findings established a clear covered "nexus" to his business activities within his scope of employment as to his providing professional services (insurance).

That is, the referenced Stipulation(s) to: (1) Waiver of Jury Trial; (2) Admission of Appropriate Evidence; (3) Court Findings of Relevant and Appropriate Facts and Conclusions of Law Pursuant to Said Admitted Evidence at a Court Hearing/Trial; and (4) Entry of Judgment (Exhibit 2) provided:[5]

I.     INTRODUCTION

This stipulation is entered into in the interest of justice, given the rights of the respective parties and the relevant evidence relating to the causes of action herein, and it is the intention of the parties and a condition of this stipulation that the referenced waiver(s) of right to jury trial be approved by the court contemporaneous with the court admitting the referenced evidence and approving and making the suggested and appropriate findings of fact by a preponderance of evidence standard and conclusions of law in a court hearing/trial as stipulated, based upon the evidence submitted and rendering a verdict and judgment to said effect against defendants.[1]

II.     TERMS OF STIPULATION

1.     All parties herein hereby stipulate and agree, subject to the court's approval, <u>that a jury trial shall be waived, and this matter may be resolved by stipulated trial/hearing before the court concerning appropriate stipulated findings of fact by a preponderance of evidence standard and conclusions of law pursuant to agreed evidence to be presented and admitted via the attached exhibits and other evidentiary submissions;</u>

2.     <u>The parties hereby stipulate to the court considering and admitting as evidence the exhibits attached hereto</u> as Exhibits B-G, namely, relevant police reports (Exhibit B), the deposition of Conrad Worthy (Exhibit C),

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[5] Exhibit 2 is a copy of the referenced Stipulation(s) to: (1) Waiver of Jury Trial; (2) Admission of Appropriate Evidence; (3) Court Findings of Relevant and Appropriate Facts and Conclusions of Law Pursuant to Said Admitted Evidence at a Court Hearing/Trial; and (4) Entry of Judgment, signed by Phillip Paul Weidner but does not bear Ms. Schleuss' signature. It is believed a copy signed by both Phillip Paul Weidner and Ms. Schleuss was filed with Judge Reese and relied upon by him, and will be obtained with due diligence for this court's consideration. The quoted text in this brief is from Exhibit 2.

the deposition of T.J.S. (Exhibit D), the deposition of Marie McQueen (Exhibit E), the deposition of J.S. (Exhibit F), and the deposition of B.C. (Exhibit G).

3.    <u>The parties hereby stipulate, subject to court approval, that the court, as a fact-finder relying on said evidence, shall make appropriate legal findings and rulings based on said evidence, on a preponderance of the evidence, more likely than not standard, as to the following facts</u>:

a.    T.J.S. was and is a single mother of three children B.C. (DOB 10-19-81), R.C. (DOB 3-9-80), and J.S. (D.O.B. 3-14-85). In 1994 she was attempting to work and support her three children.

b.    <u>On August 6, 1994, Conrad J. Worthy, in the course and scope of his professional employment, capacity, position and services as an agent on behalf of his insurance agency, Conrad J. Worthy Insurance, and as a director and/or officer and/or employee and/or owner of same, invited T.J.S. to his office to discuss potential employment with his agency.</u> The court being duly advised shall so find and rule.

c.    <u>In the course of trying to convince T.J.S. to work for Conrad J. Worthy Insurance agency, he negligently physically restrained her from leaving the premises</u>, and detained and imprisoned her and subjected her to permanent injuries, including the acts and culpable conduct admitted by him in his deposition, which culpable conduct was a violation of a legal duty owed to T.J.S. and is actionable and renders the defendants liable for the damages of plaintiffs legally and factually caused and/or to be so caused by same. The court being duly advised shall so find and rule.

d.    She broke free and escaped. She suffered personal injury and <u>continues to suffer severe emotional and mental distress</u> including as described in her deposition and the depositions of B.C. and/or J.S. and/or Marie McQueen. <u>The severe mental distress has resulted in post-traumatic stress disorder</u> including as described in her deposition and the depositions of B.C. and/or J.S. and/or Marie McQueen. The court being duly advised shall so find and rule.

e.    Post-traumatic stress affected her ability to function normally and to interact with her children, B.C., R.C. and J.S. Her children have been affected by the mental distress of their mother and have suffered and will suffer a loss of love, affection and support of their mother. The court being duly advised shall so find and rule.

f.    <u>T.J.S. still suffers and will continue to suffer from debilitating fear of injury, post-traumatic stress and painful episodes in which she has and will have flashbacks</u> to the incident causing an inability to function,

Weidner & Associates

330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

shaking, terror, hyperventilation, accelerated heartbeat, sweating, etc. The court being duly advised shall so find and rule.

           g.    Her children have witnessed the terror and fear of their mother, the need for them to protect their mother and have suffered and will suffer the disruption of the normal parent-child relationship. The court being duly advised shall so find and rule.

           h.   <u>Said past and future damages of plaintiffs are and/or will be proximately caused by said negligent acts of Conrad J. Worthy, individually, and in the course and scope of his employment and capacity, professional services, obligations, duties and position, on behalf of the Conrad J. Worthy Insurance Agency, including such matters as an agent and/or director and/or owner and/or officer and/or employee of Conrad J. Worthy Insurance Agency. One of the functions of running an insurance agency and discharging said matters, i.e., obligations, duties, services and position, is the interviewing of prospective employees, and he was doing so at the time of the actionable conduct herein, and said conduct was related to and/or arose of his conduct, i.e., said functions, services, capacity, obligations, duties, position, and employment, and within the scope and course of his professional capacity and employment as referenced. The court being duly advised shall so find and rule.</u>

           4.    Based upon said factual findings, the parties further stipulate that defendants Conrad J. Worthy, individually, and Conrad J. Worthy Insurance Agency are jointly and severally liable to the plaintiffs for the damages and relief the court finds due. The court being duly advised shall so find and rule.

_____

[1]Contemporaneous with this stipulation, the parties have entered into a companion Resolution Agreement and Assignment concerning a covenant not to execute/assignment of rights, which is attached hereto as Exhibit A, the terms of which are incorporated herein by reference.

       Clearly, his actions in attempting to rehire Ms. Ivey to continue to assist him to

provide insurance to his clients are acts, errors or omissions with a nexus as to his business

affairs regarding "rendering or failing to render professional services," to wit, her claims arise

out of his actions in attempts to hire her to further his business interests to provide such

professional services. The court's reference to <u>Am. Motorists Ins. Co. v. Republic Ins. Co.</u>, 830

P.2d 785 (Alaska 1992), does not preclude such an interpretation and in fact supports same. <u>Am.

Motorists Ins. Co.</u> involved a claim arising out of competitive bids prepared by architects to

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

design three schools.  The issue narrowly argued by the defendant was that bids to procure a

contract were preparatory work not covered as professional services.  The court refused to

narrowly construe the term.  Note that in defining professional services in that case, the court

stated that the term "professional services" <u>includes</u> acts "arising out of a vocation, calling,

occupation or employment involving specialized knowledge . . . ."  (Emphasis added.)  This

court quotes the phrase but ignores the predicate word "includes," which means professional

services include the acts specified but are not necessarily limited only to those acts.[6]   The court

in <u>American Motorists</u> cited to <u>Sachs v. St. Paul Fire & Marine Ins. Co.</u>, 303 F.Supp. 1339

(D.D.C. 1969), which found that there was coverage for professional services <u>as the act</u>

<u>complained of was done by an attorney pursuing his profession</u>.  Here, by attempting to hire

Ms. Ivey, Mr. Worthy was pursuing his business and profession.  Note that the insurance policy

herein did not define "professional services" but included within coverage an Insured, the Named

insured, and officers, directors, stockholders or employees while "<u>acting within the scope of their</u>

<u>duties as such</u>."  (Exhibit M, p. 2, to defendant's Motion for Summary Judgment; Exhibit 4

herewith.)  Hiring an employee for Worthy's insurance agency is both preparatory/necessary for

his business and within the scope of Worthy's duties as owner and officer of his agency.  <u>Judge</u>

<u>Reese so found</u> (Exhibits 1 and 2).  Furthermore, the term is undefined, yet defendant has refused

to answer legitimate discovery requests.  Plaintiffs' Fourth Discovery Requests, Request for

Production No. 2, asked:

> Please produce any and all documents defining professional services for purposes
> of underwriting and/or claims from 1994 – present.

---

[6] Note that this court apparently finds it is relevant to note the subjective view of Worthy's counsel (without knowledge of all terms and conditions of the policy and AHAC's own internal interpretations of same, especially terms undefined in the policy).  Therefore, AHAC's own internal underwriting/claims documents (which are the subject of the Motion to Compel) may well be relevant, and should be compelled, produced and examined.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200  Fax (907) 278-6571

<u>RESPONSE</u>:  . . . it is neither relevant nor reasonably calculated to lead to discovery of admissible evidence in that insurance documents defining "professional services" do not control a court's interpretation of that term. . . ."

<u>See</u> Exhibit 10 herewith.

This non-responsive answer was dated May 18, 2006, and is not in compliance with the discovery rules or Alaska law.  Plaintiffs request that the court's order and judgment be vacated and that defendant be compelled to respond.  A motion to compel is also being filed.  Obviously, how the defendant itself defines professional services and how the insurance company handles claims under professional services insurance polices <u>are</u> <u>relevant</u>.

Likewise, the court's reference to exclusions for dishonest, criminal fraudulent or malicious acts, does not preclude coverage or duty to defend as to the negligence claims, and further, there is no definition in the policy of "bodily injury," and so clearly the claims for emotional distress, sexual harassment and outrage are arguably covered.

Moreover, the court's reference in its Order at p. 5 to exclusion for "personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the insured" does not defeat coverage of Ms. Ivey's claims for emotional distress, sexual harassment or outrage, since the policy in fact defines "personal injury" as a "term of art," as to which the policy provides:

(A)    "Personal Injury" means injury or damage sustained by any person or organization caused by or arising out of one or more of the following offenses.
(i)    false arrest, detention or imprisonment, or malicious prosecution;
(ii)    the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;
(iii)    wrongful entry or eviction, or other invasion of the right of private occupancy.

The covered claims do not fall under those categories and are therefore not excluded.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The court largely ignores the negligence claims.[7]  While the court incorrectly states as to the negligence infliction of emotional distress that it is not covered since "only those negligent acts performed in rendering or failing to render professional services [sic] are covered by the policy" (Order at 6; emphasis added) that misstates the issue.  The policy actually focuses on "claims . . . arising out of: . . . Any negligent act, error or omission in rendering or failing to render professional services."  (Emphasis added.)  Since, as found by Judge Reese, the claims arise out of Mr. Worthy's acts to further his business (trying to rehire Ms. Ivey) so as to constitute a nexus to his business of rendering or failing to render professional services for others, clearly his actions in furthering his business, to wit, attempting to induce Ms. Ivey to resume her employment, and related claims are covered and/or must be defended.

   That is, the bottom line is that as long as the acts in question are negligent acts and not subject to the specific exclusions, and as long as they have a nexus with, i.e., are reasonably related to, the business activities of Mr. Worthy as to the business of providing professional services (i.e., "arising out of" same) (even if torts), said business activities in turn for the purposes of rendering professional services (which clearly hiring a secretary or an administrative assistant is), they are covered and/or must be defended, as long as they are not a mere personal frolic unrelated to the business, and are not totally unconnected to or arising from such business interests.

   Significantly, assuming, which the insurance company now asserts, that Exhibit F to the Motion for Summary Judgment is a part of the policy[8] (or, even if it is not, in the event the

---

[7] Significantly, the court only focuses on "Worthy's actions in violently assaulting Ivey and damaging her vehicle" and says that they "do not fall under even the most broad definition of 'professional services.'"  Order at 5.  Why does the court ignore the negligence claims, which are based on acts [as found by Judge Reese to have a business nexus (trying to rehire Ms. Ivey)]?

[8] Note that this must be further clarified via the Motion to Compel Discovery.  See discussion, infra, regarding questions as to the source of Exhibit F.  See also Exhibits 5, 6, 7 and 8 herewith.

Weidner & Associates
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

T.J.S. plaintiffs wish to elect to hold the company to being bound by judicial/litigation pleadings

estoppel as to asserting that Exhibit F is a part of the policy), there is a broad definition of

coverage in Exhibit F.  In particular, Exhibit F, which provides the errors and omissions policy,

provides the following coverage:

> It covers you for negligent acts, errors and omissions in conducting business for
> State Farm, subject to a side agreement between State Farm and American Home.
>
> It covers your employees for negligent acts, errors and omission in conducting
> business for State Farm.  [Emphasis added.]

Clearly, under this definition, i.e., "conducting business," i.e., attempting to hire Ms. Ivey, the

resulting claims for the infliction of emotional distress, negligent sexual assault and outrage are

covered, especially given Judge Reese's findings.[9]

Note that as reflected by the affidavit of counsel filed herewith, it appears that the

origin of Exhibit F was in fact merely a document provided to Mr. Worthy as a part of his

business arrangement between Mr. Worthy and State Farm describing certain insurance benefits

available, and not an actual part of the homeowner's policy.

That is, as reflected by Exhibit 9 herewith, on August 10, 1998 Ms. Schleuss

provided certain discovery to Mr. Sisson and Mr. Cohn, with a letter which provided in pertinent

part:

> I enclose the information available to me regarding potential insurance coverage
> for Conrad Worthy.  Enclosed is a copy of Mr. Worthy's homeowner's policy
> which was in force in August of 1994.  Enclosed also is a copy of the entire binder
> which describes the business arrangement between Mr. Worthy and State Farm at
> that time.

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

---

[9] Note that under the American Motorist Insurance Company definition by the Alaska Supreme Court, clearly "professional services" encompasses the business activities of Mr. Worthy in attempting to induce Ms. Ivey to resume employment, since the definition is "arising out of a vocational calling, occupation or employment involving specialized knowledge, labor of skill."  Clearly, an insurance agent meets that definition, and his activities, i.e., his business activities, which are "arising out of" such vocation, i.e., attempting to hire staff, as opposed to his purely personal frolics, unrelated to his business, are covered.

The referenced homeowner's policy is believed by undersigned counsel to be reflected by Exhibit 9 herewith.  The "entire binder" (from which Exhibit F most likely came; see Exhibit 7) which describes the "business arrangement between Mr. Worthy and State Farm at that time" is exceptionally voluminous, and will be tendered to the court with due diligence for the court's consideration.

However, review of same reveals that it appears that the origin of Exhibit F, on which the defendant in the instant case relies, and on which the court relies, in fact came from documents in that binder and not from the actual AHAC insurance policy.

Counsel's belief at the present juncture is that the documents that have actually been produced directly relating to the AHAC policy are those reflected by Exhibit 4 herewith.

Moreover, it is likewise counsel's belief that in the instant litigation, to wit, the litigation before this court, AHAC has obtained through discovery voluminous documents from Ms. Schleuss' file, and most likely obtained Exhibit F from that discovery (see Exhibit 8), or possibly from Mr. Sisson.  It is not clear at this juncture the exact origin of Exhibit F which the defendant used, since there does not appear to be a Bates stamp number on it, and certain documents in counsel's file that were produced in discovery in this matter from Ms. Schleuss' file bear a Bates stamp number of CS00837-CS00839(Exhibit 8).

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

V.    THE COURT CLEARLY ERRED IN ITS ESTOPPEL ANALYSIS AS TO ALASKA
      LAW.

              The court ignores the Alaska case of <u>Lloyds</u>, <u>supra</u>.  In <u>Lloyds</u>, the Alaska

Supreme Court specifically rejected the insurance company's argument that the insured must

show actual prejudice (i.e., that coverage actually existed – or, as in this case, as this court

mistakenly insisted, that there were facts to show actual coverage as to the activities of

Mr. Worthy) and found that the insurance company was estopped from denying coverage where

it violated/abused its defense of the policyholder.  The court reasoned:

> Moreover, Lloyds has not shown that the superior court was clearly erroneous in
> finding actual prejudice -- a finding that effectively establishes Lloyds's failure to
> rebut the presumption of prejudice. <u>Lloyds asserts that PacMar's coverage
> investigation could not have harmed the Clarks because the evidence conclusively
> demonstrates that the JAMIE LYNN was outside the area of the policy's coverage.
> Lloyds insists that "no 'dream team' of lawyers could have altered the outcome on
> that fatal point." But this outcome-based view of the prejudice requirement is
> unduly rigid.</u> We have previously recognized that "an insurer's obligation to
> defend and the obligation to indemnify are separate and distinct elements" and that
> an "insurer may have an obligation to defend although it has no ultimate liability
> under the policy."  <u>Thus, coverage is not the ultimate measure of prejudice; in
> order to establish prejudice, Fulton was required to show only that PacMar's
> conduct caused some actual harm to the Clarks, not that it changed the outcome of
> the case.</u>
>
> Impropriety of the kind that PacMar committed is intolerable if it has any adverse
> effect on an insured party. <u>The need to discourage such overreaching is
> particularly compelling in insurance cases because of the special fiduciary
> relationship that exists between an insurer and its insureds, the insurer's peculiar
> ability to take advantage of its insured's trust, and the typical insured's
> vulnerability to overreaching conduct. Given the unique nature of this
> relationship, a bright-line, easily established test of prejudice also promotes
> efficiency and fairness. A stricter, outcome-based definition of prejudice would
> require case-by-case litigation to determine actual coverage -- a requirement that
> would pit the insurer against its own insured on a playing field where the insurer
> almost always enjoys tremendous financial and institutional advantages.</u>
>
> <u>Moreover, by punishing misconduct only if the insured can show that the
> misconduct defeated otherwise available coverage, an outcome-based prejudice
> test would effectively reward successful misconduct. It would encourage insurers
> to dispute coverage -- and to overreach in the process to ensure that their efforts</u>

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

succeed. The strict prejudice requirement thus would functionally convert the remedy of coverage by estoppel into a remedy of coverage by proof of coverage; by requiring the insured to prove that the insurer's misconduct actually changed the outcome, it would effectively force the insured to shoulder the affirmative burden of proving coverage.

The dissent suggests that when an insurer's breach makes no difference in the ultimate outcome, or when it is not a fundamental breach, the remedy of coverage by estoppel should be abandoned in favor of some lesser punishment -- one more suitable to the crime. But applied to insurance contracts, a "punishment- fits-the-crime" approach would retain all of the drawbacks of an outcome-based prejudice rule without offering any offsetting advantages. It would continue to encourage case-by-case litigation of coverage, to reward successful misconduct (albeit partially rather than fully), and to saddle the insured with the duty of proving either loss of coverage or some unspecified alternative form of actual damage. Moreover, the dissent proposes no specific sanction to replace estoppel. And we can think of none that would be workable -- that is, easy to apply yet still capable of effectively deterring misconduct.

Id. at 1207-1208 (emphasis added).

Therefore, as in Lloyd's, the insured here, Mr. Worthy, has suffered harm, and has established presumptive prejudice (and in point of fact, as discussed infra, actual prejudice). Here, as in Lloyd's, under the legal theory of coverage by estoppel, plaintiffs need not prove that Worthy actually would have been covered, i.e., to be indemnified, to prove "actual damages." Such a holding as this court has mistakenly adopted would not only involve serious issues of speculation as discussed below, but would "…require case-by-case litigation", "…that would pit the insurer against its own insured on a playing field where the insurer almost always enjoys tremendous financial and institutional advantages…" and the "...outcome-based prejudice test would effectively reward successful misconduct."

Thus, with all due respect to the court, the court is flat wrong when it states, "No Alaska case directly addresses whether original coverage can be manufactured by estoppel." (Order at 7; emphasis added.) Lloyd's holds that where, as here, an insurance company violates or abuses or ignores its duty of defense to the policyholder (i.e., as here, ignores its statutory duty

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

to respond to a tender letter), the policyholder does not have to show prejudice or actual

coverage to enable coverage by estoppel; further, there is no necessity of showing "reliance" in

this matter since, as discussed below, there is a statutory duty to respond to a tender so that a

defendant can plan his defense accordingly, and presumed and actual prejudice to a policyholder

from a carrier's failure to allow him to do so.[10]

VI.     THE RECORD IS CONFUSED AS TO THE ISSUE OF A PROPER TENDER AND
        MUST BE CLARIFIED ONCE THE MOTION TO COMPEL IS GRANTED.

          The insurance company defendant in this case is steadfastly refusing to produce

basic discovery, which is mandatory under Alaska rules of voluntary disclosure and this court's

rules of voluntary disclosure.  It still has not "stepped up to the plate" and affirmatively revealed

either (1) the specific terms and provisions of the applicable policy, or (2) relevant documents as

to their interpretation of its terms.

          As reflected by Exhibits 5, 10 and 11 herewith, it has simply ducked the issue.

The affidavit by William Warnock (Exhibit 5), an attorney for defendant, in support of the

Motion for Summary Judgment does not even refer to the true foundation, origin, or significance

of Exhibit F.  The defendant simply "slipped in Exhibit F" in its briefing and claims that

somehow it is relevant to some type of mandatory duty as to how to make a tender.  The court

then inappropriately relies on same, and states that it is "inequitable to reward an insured by

expanding a policy where the insured improperly tendered the claim" (Order at 8,) when the

document relied on by the court is not proven to be part of the policy or even shown to control

the reporting procedures.

          In point of fact, ¶ VI of the policy provides that as to Notice of Claim or Suit:

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

---

[10] In the Lloyd's case the boat was found to be outside the coverage area, with no actual coverage.

> Upon the Insured becoming aware of any act, error or omission which could reasonably be expected to be the basis of a claim or suit covered hereby, <u>written notice shall be given by or on behalf of the Insured to the Company [i.e., AHAC] or any of its authorized agents</u> as soon as practicable, together with the fullest information obtainable. <u>If claim is made or suit is brought, the Insured must immediately forward to the Company [AHAC] every demand, notice, summons or other process received by him or his representatives</u>. If during the policy period of the extended reporting period, the Company shall be given written notice of any act, error or omission which could reasonably be expected to give rise to a claim against the Insured under this policy, any claim which subsequently arises out of such act or omission shall be considered to be a claim reported during the policy year or extended reporting period in which the written notice was first received.

<u>See</u> Exhibit M, p. 3 to defendant's Motion for Summary Judgment (Exhibit 4 herewith); emphasis added.

Accordingly, that tender was clearly proper since it went directly to the company (AHAC). On May 18, 2006, defense counsel mailed AHAC's Second Supplemental Response to Plaintiffs' Third Discovery Requests <u>finally</u> providing some response to plaintiffs' third discovery requests regarding routing/handling mail <u>four</u> <u>months</u> <u>late</u>. There is no proof that the insured improperly tendered the claim as alleged by defendant and apparently accepted by the court. Furthermore, the Second Supplemental Response shows that defendant would not be prejudiced and should have been able to forward the tender of defense letter to the appropriate personnel. <u>See</u> Exhibits 10 and 11 herewith.

Significantly, if in fact Exhibit F is a portion of the policy and/or if the T.J.S. parties here now elect to hold the defendants, by virtue of judicial/litigation estoppel, to the position that it is same, it is significant that the provisions referenced <u>supra</u> at pp. 9-10 specifically promise that there is coverage for any "<u>negligent acts, errors and omissions in</u>

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

conducting business" which clearly and indisputably would involve the alleged claims of Ms. Skeen.[11]

Moreover, there is basic reliance and presumed actual prejudice from AHAC's ignoring the tender, as Worthy should have had the extra resources of the other policy for defense and indemnification, or at least he and his counsel should have had the benefit of assessing the likelihood of his legal rights and prevailing as to having same. By cavalierly and callously ignoring their statutory duty to provide clear, unequivocal notice in writing to the admitted policyholder as to the company's position as to coverage, indemnification and defense, they took away his opportunity to: (1) assess his resources as to same; (2) assess his options as to same by virtue of agreeing or not agreeing to a reservation of rights; most critically to litigate coverage either prior to or contemporaneously with his attempt to defend himself in the tort action. Note that both policies might overlap, i.e., provide indemnification for certain acts, while other acts might be covered under the homeowner's policy and not the professional services policy (and vice versa), thus, having two potential policies expanding the defense and coverage options as to the various causes of action and issues in the tort litigation, and it is clearly prejudicial to have an additional gap in assessing potential coverage.

All of this prejudiced, to wit, harmed, him (and his defense counsel and independent counsel) and, due to clear exposure to an excess verdict as to the State Farm coverage, which he was clearly facing given the facts, law and evidence, he was forced to make a reasonable settlement decision (the agreed resolution of the Alaska tort claim; see Exhibit 3) which in turn was clearly adopted by Judge Reese in his findings (Exhibits 1 and 2), and thus the company is now responsible.

---

[11] Again, the court in its conclusion states that there is no coverage focusing on the "criminal, violent conduct [that was] not covered by the professional services policy" (Order at 8) and ignores the negligence causes of action pled by plaintiff and found by Judge Reese.

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

The court confuses reliance on affirmative misrepresentative or affirmative acts by the company, in violation of its duties and obligations (which does impose estoppel) with the fact that "reliance" and prejudice, i.e., harm, also flows from omissions and/or refusals of a company to discharge its duties and obligations to an insured and provide clear notice as to its position as it is required to do under the statutes (with equal estoppel). The second scenario is equally prejudicial and an equal source of coverage by estoppel, and the Alaska Supreme Court has announced Alaska's policy in the <u>Lloyd's</u> case, to wit, that coverage exists once such estoppel occurs, even if in fact no coverage is warranted under the terms and conditions of the policy or the facts as ultimately determined.

The court's current holding requiring proof of actual prejudice (note however there is actual prejudice in this case, as stated) is directly contrary to the Alaska Supreme Court's language in <u>Lloyd's</u> which stated:

> <u>[T]he strict prejudice requirement thus would functionally convert the remedy of coverage by estoppel into a remedy of coverage by proof of coverage; by requiring the insured to prove that the insurer's misconduct actually changed the outcome, it would effectively force the insured to shoulder the affirmative burden of proving coverage</u>."

<u>Lloyd's</u> 2 P.3d at 1207-1208 (emphasis added). Such requirements have been soundly rejected by the Alaska Supreme Court in favor of coverage by estoppel.

There is clear prejudice, both presumed and as a matter of fact to Mr. Worthy from the cavalier and callous refusal of AHAC to respond to a tender.

This is so since:

1.       Any tort defendant and his defense counsel and independent counsel need to assess his settlement position (and tactical defense position as set out below) by virtue of a

**Weidner & Associates**
330 L Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

realistic notice of, and evaluation of, the applicable policies and carriers' position as to coverage, defense and indemnification, i.e., what are his promised and acknowledged insurance resources to protect him as to defense and indemnification (policy limits), as well as potential rights and coverage in light of the carrier's specific written response (which is required as a matter of law) to a tender letter;

2.      This is the essence of "policy limits," i.e., what can he reasonably expect to be defended for and indemnified to when faced with a tort complaint (and what settlement and litigation strategy to adopt in light of same both as to potential excess judgment exposure or factual positions that might impact coverage).

"Full Policy Limits" is clearly defined under Alaska law.  The Alaska Supreme Court has held squarely, in numerous cases, that "policy limits" means the amount of the maximum <u>potential liability</u> a carrier has assumed under the terms and conditions of the policy, if the case were tried, and there was an adverse verdict, and that the actual amount of a "policy limits" settlement does not therefore depend on if the case is settled, or actually goes to trial.  In <u>Tucker v. United Services Auto. Ass'n</u>, 827 P.2d 440, (Alaska 1992) the court held, as to the "policy limits" issue in the context of pre-judgment interest:

> USAA maintains that the language of the Amendatory Endorsement unambiguously provides for payment of prejudgment interest only after full litigation and a court award of interest.  It argues that no reasonable policyholder could interpret the language to provide "prejudgment interest" when the parties agree to a settlement even one, such as this, which was given effect through a court order.  <u>In essence, USAA is arguing that the limits of its policy coverage depends on whether the case is settled or goes to trial.  We disagree.</u>
> III
>
> In *Schultz v. Travelers Indemnity Co.,* 754 P.2d 265, 267 (Alaska 1988), we recognized that an insurance carrier's duty to act in good faith to protect the interests of its insured requires that it determine "the amount of money judgment which might be rendered against its insured," and tender as settlement the maximum limits of insurance coverage when "there exists a substantial likelihood

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that a verdict will be rendered against the insured in excess of the coverage provided by the policy." *Id.* at 266-67.

…

*Id.* at 267. We observed that the insurance carrier "was not required to contract with its insured to pay unlimited court cost," but that once it did, it was bound to pay those costs in its "policy limits" settlement. n.3. *Id.*

…

[I]t made no difference whether that limitation is reached by a determination made by a court or, as here, a settlement made by the parties. Whether the disputed coverage involves the base liability limit, court costs, or prejudgment interest, it is the insured's total *potential* liability which is of concern to the insured in a "policy limits" settlement…

By offering to settle the case for "policy limits," USAA acted in conformity with its contractual obligation to its insured and, thereby, protected itself from a later charge of bad faith. *See Providence Washington Ins. Co. v. Fireman's Fund Ins. Cos.*, 778 P.2d 200, 204 (Alaska 1989).

...

> n.3  *See also, Providence Washington Ins. Co. v. Fireman's Fund Ins. Cos.,* 778 P.2d 200, 204 (Alaska 1989) (tender of policy limits means company must surrender control over funds equal to its *potential liability* under the insurance policy); *Insurance Co. of North American v. State Farm Mutual Auto Ins. Co.,* 663 P.2d 953, 954 n. 1 (Alaska 1983); *Salmine v. Knagin,* 645 P.2d 148, 150 n. 8 (Alaska 1982); *Continental Ins. Co. v. Bayless & Roberts, Inc.*, 608 P.2d 281, 285 n. 6 (Alaska 1980). These cases, taken together, establish the fairly obvious proposition that policy limits are what an insurance company would have to pay under its policy if it went to trial and received an adverse verdict.

Tucker v. United Services Auto. Ass'n, 827 P.2d at 441 (emphasis added).

As referenced in Tucker, where a carrier has agreed to pay "add-ons" of "costs," projected attorneys fees based on a reasonably potential verdict are a part of a defendant's liability insurance policy limits, except to the extent of any valid limit on same under the terms and conditions of the policy, as the Alaska Supreme Court held squarely in Schultz v. Travelers Indem. Co., 754 P.2d 265 (Alaska 1988).

In Schultz, a plaintiff made a "policy limits" demand and there existed a substantial likelihood that a verdict would be rendered against the insured in excess of the coverage provided by the policy of insurance. Under those facts, the Alaska Supreme Court held

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

that the insurer had a duty to tender as settlement of the claim the maximum limits of insurance

coverage.  Id. at 267.  This obligation was grounded in the insurer's legal duty to act in good

faith to protect the interests of the insured.  (Citing Crisci v. Security Ins. Co., 66 Cal.2d 425, 58

Cal. Rptr. 13, 426 P.2d 173, 178 (Cal. 1967)).

        In determining what constitutes the "maximum limits of insurance coverage," *i.e.*,

full "policy limits," the court reviews the contractual obligations undertaken by the insurer in the

insurance policy in question in light of the applicable statutes, regulations and court opinions

which have addressed the issue.  Schultz supra at 267.  The insurance policy in Schultz provided

a face value limit of $100,000 per passenger.  The Court thus found that Travelers had a duty to

tender the face value of $100,000 to each plaintiff.  The insurance contract also obligated

Travelers, as in this case, to pay court "costs".  The policy language, as construed by the Alaska

Supreme Court, obligated Travelers to pay Rule 82 attorney's fees as an additional item of policy

coverage on the full amount of a jury verdict rendered against the insured defendant as there was

no valid "Rule 82" restriction or limitation.  (Schultz, citing Guin v. Ha, 591 P.2d 1281, 1285-86

(Alaska 1979); Weckman v. Houger, 464 P.2d 528 (Alaska 1970); Continental Ins. Co. v.

Bayless and Roberts, Inc., 608 P.2d 281 (Alaska 1980).

        Thus, the court held in Schulz, that Travelers also had the legal duty to make a

determination as to the amount of a money judgment which might be rendered against its

insured.  In order to protect the insured, Travelers then had the duty to tender in settlement that

portion of the projected money judgment which Travelers contractually agreed to pay.  That

amount, $100,000 per passenger, plus Rule 82 fees on the sum of the projected verdict (as there

was no valid Rule 82 restrictions) plus pre-judgment interest and Rule 79 costs, were "full policy

limits."

Weidner & Associates
330 L. Street, Suite 200
Anchorage, AK  99501
(907) 276-1200  Fax (907) 278-6571

Accordingly, in this case, given the Alaska statutes and common law, Mr. Worthy had an absolute right, given his proper tender, to know (in writing):

    1.     What was State Farm's position (as to any "excess coverage" of $500,000+), and what was AHAC's position (as to the primary coverage of $1,000,000+); and

    2.     <u>Both</u> as to his settlement and litigation strategy.

When he was completely ignored by AHAC, he had no realistic way to assess, nor did his retained counsel, Ms. Schleuss, who was being retained by State Farm, or for that matter any independent counsel he may have had, have a basis to assess, the realistic coverage and indemnification (policy limits) that were promised and/or potentially would be available to him. That is, it is a totally different issue if he knows: (1) he has full coverage from State Farm and AHAC (for $1 million each claim from AHAC, and $500,000 excess from State Farm), or (2) that State Farm and/or AHAC, while not acknowledging full indemnification, are proceeding to defend under a reservation of rights under specific grounds and conditions so he can assess the possibility of getting such coverage via litigation, or (3) he must assume that he only has limited coverage from State Farm on a reservation of rights, and has no way to assess the possibility (given the absence of a written tender response by AHAC) of eventually prevailing on his coverage protection as to the $1 million from American Home Assurance.

When faced with such uncertainty (which uncertainty as a matter of law he should not have to be faced with, given the duties of the carriers to provide him with their position in writing on a tender, and thus is per se prejudice) and further faced with the reasonable likelihood of an excess verdict above his State Farm policy (even if he prevails on a reservation of rights posture as to State Farm), then he has no realistic choice but to "throw in the cards" and make a reasonable settlement, which he did in this case. As a matter of law, there is prejudice and

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

coverage by estoppel since AHAC failed to respond in writing to the tender, and inform

Mr. Worthy of its position and his prospects for "policy limits" and defense as it was required to

do by statute and common law.

It is quite simply the right of a policyholder, especially one who has a policy from

a primary and excess carrier, to know "what chips he has in the pot before he bets his cards or

throws them in."  If one of his sources of chips ignores him, in violation of statutory and

common law duties to tell him "what chips may be available," then he may not be able to "call

the hand" from his other chips.

Note further that this analysis, i.e., the right of a policyholder of multiple policies

to know what coverage is being either acknowledged or disputed and the specific terms and

conditions of the dispute (both as to "amounts of coverage" and "overlap"), <u>involves not only a

"total chips" analysis, but likewise an "overlapping chips" analysis</u>.  This is, defense counsel and

the tort defendant have a right to know what areas (causes of action) may or may not be covered

by each policy, what any reservation of rights dispute is, and assess his ultimate exposure to an

excess judgment in light of same (i.e., probable policy limits) so as to make settlement decisions.

<u>Such information is also crucial to tactical and strategic defense litigation

strategy, i.e., whether or not to defend on facts that might void coverage as to one or more claims

or coverage</u>.  (<u>See</u> <u>Lloyd's</u>.)  This was in <u>fact</u> the basis of the presumed prejudice in <u>Lloyd's</u> to

the policyholder due to the impact on the policyholder's rights from the carrier's abuse of their

defense duties regarding the facts adduced as to either litigation or investigation as to the effects

on potential coverage.

For example, assume the following:

1.    As was done, a tender was made to American Home;

2.    American Home discharged its common law and statutory duties and responded as to its actual position reference coverage;

3.    American Home responded and said "We are denying coverage and indemnification, except we will defend you under a reservation of rights, reserving our right to dispute coverage if it is found that the exclusion which provides "[D] For personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Insured," applies.

While clearly Mr. Worthy, if he accepted that reservation of rights, was bound to know that he did not have coverage for such limited "personal injury" claim(s), given the actual definition in the policy of "personal injury," he would still have coverage for all other claims, including the ones at issue in this case, and could know in making tactical decisions as to both litigation or settlement he had the million dollar coverage and indemnification (had "those chips" as to that "overlap") regarding all negligence claims but for the strict policy defense "personal injury."  This is precisely why there is an absolute duty on a carrier to respond to a tender, to give definitive information to the policyholder and his defense counsel and/or independent counsel of the parameters of potential coverage, so intelligent decisions can be made as to both settlement decisions and litigation strategy, and likewise precisely why there is actual prejudice from the failure of AHAC to discharge that duty and obligation to Mr. Worthy.

Thus, there is coverage by estoppel.

VII.    SUMMARY AND CONCLUSION

Plaintiffs respectfully request, in light of the arguments herein and the belated responses of defendant dated May 18, 2006 and any response under the companion Motion to

**Weidner & Associates**
330 L. Street, Suite 200
Anchorage, AK 99501
(907) 276-1200 Fax (907) 278-6571

Compel Discovery (constituting new evidence/information not previously available to the court or plaintiffs), that the orders granting summary judgment and dismissal be vacated and the judgment set aside, and that the court compel discovery, grant oral argument, and then deny summary judgment.

RESPECTFULLY SUBMITTED this 31st day of May, 2006.

WEIDNER & ASSOCIATES, INC.
Attorneys for Plaintiffs

s/ Phillip Paul Weidner
WEIDNER & ASSOCIATES, INC.
330 L Street, Suite 200
Anchorage, AK  99501
Phone (907) 276-1200
Fax (907) 278-6571
E-mail: jgreene@weidner-justice.com
ABA 7305032

CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2006, a copy of the foregoing **Motion by Plaintiffs for Rule 59 Relief** was served electronically on:  Andrew Guidi.

s/ Phillip Paul Weidner