IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| TJ IVEY, RENEE M. CROUSE, BRIAN J. CROUSE, and JESSICA LYNN SKEEN,<br><br>Plaintiffs,<br><br>vs.<br><br>AMERICAN HOME ASSURANCE COMPANY,<br><br>Defendant. | Case No. 3:03-cv-0202-TMB<br><br>O R D E R |

## INTRODUCTION

Before the Court is Defendant American Home Assurance Company's ("American Home") motion for summary judgment. Docket Nos. 20 (Mot.); 25 (Opp'n); 26 (Reply). American Home argues that under the insurance policy at issue it had no duty to defend, and is therefore entitled to judgment as a matter of law.

## BACKGROUND

Plaintiffs are the assignees of the rights of Conrad Worthy arising out of American Home's failure to defend or provide coverage in the litigation entitled *T.J.S., et al. v. State Farm Insurance Company, et al.*, Alaska Superior Court No. 3AN-96-5147 CI. Plaintiff T.J. Ivey met Conrad Worthy in late 1992 and the two began an on and off romantic relationship that lasted several years. Worthy was an independent contractor with State Farm Insurance Company, whose insurance

1

*Exhibit A*

policies he sold. The relationship deteriorated in 1994 after Ivey was sexually assaulted while working in Barrow, Alaska. Ivey briefly returned to Anchorage, and while staying with a friend, accepted an invitation from Worthy to meet. After meeting and discussing the possibility of Ivey working for Worthy, Worthy indicated that he would drive Ivey back to her vehicle. Instead, he drove her to his office, where he became violent, and physically and sexually assaulted her, apparently while making crude remarks about the assault she suffered in Barrow. *See* Docket No. 20, Ex. A at ¶ 22–23. Ivey eventually escaped and contacted the authorities. After Ivey escaped, Worthy went to her car and caused severe damage to it, including throwing buckets of paint throughout the interior. *Id.* at ¶ 28. Worthy pled guilty to fourth-degree assault and criminal mischief. Docket No. 20, Ex. B. Following the guilty plea, Ivey brought a civil suit in tort against Worthy. Worthy's counsel tendered the defense to State Farm, and State Farm agreed to pay Worthy's legal costs from the date of tender forward. *Id.* at Exs. C, D. Worthy's counsel then sent a letter to American Home, with whom Worthy had a policy, attempting to tender the lawsuit. *Id.* at Ex. E. American Home never responded to the letter, and denies ever having received it. *See* Docket No. 20 at 4. This is where the present controversy begins in earnest.

In connection with his position as an insurance salesperson, Worthy obtained a professional services insurance policy ("the policy") from American Home. American Home argues that summary judgment is warranted because Ivey's claims arose out actions that are excluded from the policy—criminal assault and intentional damage to Ivey's vehicle. Plaintiffs counter that because American Home failed to respond to Worthy's counsel's letter purporting to tender the claim, American Home is estopped under Alaska law from arguing that coverage does not exist. The Court will first address the applicability of the policy to the conduct at issue before analyzing whether American Home is estopped from relying on the policy exclusions.

## DISCUSSION

The standards for summary judgment are well settled. Federal Rule of Civil Procedure 56 dictates that "[a] party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may . . . move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof." Fed. R. Civ. P. 56(a); *see also* Fed. R. Civ. P.

ORDER

56(b) (providing the same standard for parties defending a claim). Summary judgment is appropriate if the Court finds that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court will construe all evidence and draw all evidentiary inferences in favor of the nonmoving party. 10A Charles Alan Wright *et al.*, *Federal Practice & Procedure* § 2727, at 459 & n.5 (3d ed. 1998) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144 (1970)).

A dispute over a "genuine" material fact exists if the evidence would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48. The nonmoving party may defeat the summary judgment motion by producing sufficient specific facts to establish that there is a genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). However, mere allegations of factual dispute, without more, will not defeat an otherwise proper motion. *Angel v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981) ("A motion for summary judgment cannot be defeated by mere conclusory allegations unsupported by factual data.").

I.   **Coverage Under the Policy**

In diversity cases, state law governs interpretation of substantive matters. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–80 (1938). Under Alaska law, "[t]he construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations, Inc. v. Ill. Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981).

American Home argues that it is entitled to judgment as a matter of law because Worthy's intentional criminal acts are not covered by the professional services policy and Ivey's claim therefore did not trigger the duty to defend. In general, an insurer's duty to defend arises when any part of the claim is arguably within the scope of the policy's coverage. *See* Lee R. Russ, Thomas F. Segalla, 14 *Couch on Insurance* 3d, § 200:12 at 200-35. Under Alaska law, an insurer's duty to

ORDER

defend is separate and apart from the duty to indemnify. *See Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992) (citing *Afcan v. Mut. Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979)). Regarding the duty to defend, the Alaska Supreme Court has stated:

> Depending upon the nature of the claim against the insured, the insurer may have an obligation to defend, even though it has no ultimate liability under the policy. We believe that the language of the standard duty to defend clause creates a reasonable expectation on the part of the insured *whenever* a complaint states a cause of action within, or potentially within, the policy coverage . . . .[I]f the complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy, the insured has the contractual right to a proper defense at the expense of the insurer.

*Afcan*, 595 P.2d at 645. Thus only if there is no possible basis on which the insurer would be required to indemnify will there be no duty to defend. *Id.; see also Avemco Ins. Co. v. Davenport*, 140 F.3d 839 (9th Cir. 1998) (applying California law and stating "[a]lthough the duty to defend is broader than the duty to indemnify, no duty to defend arises if the undisputed facts establish that the insured is not entitled to coverage"). The Alaska Supreme Court has further pronounced that an insurance company that "wrongfully refuses to defend is liable for the judgment which ensues even though the facts may ultimately demonstrate that no indemnity is due." *Sauer*, 841 P.2d at 184. In reaching this conclusion in *Sauer*, the Court relied on three cases: *St. Paul Fire & Marine Ins. Co. v. Vigilant Ins. Co.*, 919 F.2d 235, 240 (4th Cir. 1990), *Shurgast v. Schumann*, 242 A.2d 695 (Conn. 1968), and *Sims v. Illinois National Casualty Co.*, 193 N.E.2d 123, 127–30 (Ill. App. Ct. 1963). Each of these three cases reiterates the basic principle that the duty to defend only arises if the claims are plausibly covered by the policy. *St. Paul Fire & Marine Ins. Co.*, 919 F.2d at 240 ("the insurer avoids its duty to defend only if the facts are not even arguably covered by the policy" (citation omitted)); *Shurgast*, 242 A.2d at 489 ("the determination of the question whether Aetna had a duty to defend the original action . . . depends on whether the complaint in that action stated facts which appear to bring [the plaintiff's] claim of damage within the policy coverage."); *Sims*, 193 N.E.2d at 126 ("the generally recognized doctrine is that the insurer is under a duty to defend a suit against the insured where the petition or complaint in such suit alleges a state of facts within the coverage of the policy.").

The scope of the policy coverage at issue here is outlined on the first page of the document:

ORDER

> **COVERAGE**: To pay on behalf of the Insured all sums which the insured shall become legally obligated to pay as damages because of any claim or claims first made against the Insured and reported to the Company during the policy period arising out of:
>
> [A] any negligent act, error or omission in rendering or failing to render professional services for others in the Insured's capacity as an Insurance Agent for the Insurance Company or Companies named in the declarations made a part hereof, and caused by the Insured or any person for whose acts, errors, or omissions the Insured is legally responsible;
>
> [B] personal injury caused by an offense arising out of the rendering or failing to render professional services for others in the Insured's capacity as an Insurance Agent for the Insurance Company or Companies named in the declarations.

Docket No. 20, Ex. M at 1. The policy also included the following exclusions clause:

> **THIS POLICY DOES NOT APPLY:**
> [A] to any claim arising out of any dishonest, criminal, fraudulent or malicious act, error or omission of any Insured, partner or employee hereunder;
>
> [B] to any claim arising directly out of bodily injury to, or sickness, or disease, or death of any person, or injury to, or destruction of any tangible property, including the loss of the use thereof.
> . . . .
>
> [D] for personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Insured.

*Id.* at 2. Defendant argues that it had no duty to defend Worthy in this case because Ivey's claim did not present even a possibility of coverage under the policy. Ivey's complaint alleged the following: (1) Sexual harassment; (2) assault; (3) sexual assault; (4) the tort of outrage; (5) negligent infliction of emotional distress; (6) intentional infliction of emotional distress; (7) negligent entrustment as to State Farm; (8) destruction of property; and (9) invasion of privacy. Docket No. 20, Ex. A at 8–11.

    The Alaska Supreme Court has defined the term "professional services" as including acts, "arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill." *Am. Motorists Ins. Co. v. Republic Ins. Co.*, 830 P.2d 785, 787 (Alaska 1992) (quoting 7A J. Appleman, *Insurance Law and Practice*, § 4504.01 at 309–10). In analyzing whether an act falls under the purview of professional services, "the court must look not to the title or character of the party performing the act, but to the act itself." *Id.*

    Worthy's actions in violently assaulting Ivey and damaging her vehicle do not fall under even the most broad definition of "professional services." It is inapposite that the assault took place

ORDER

in Worthy's place of business, and that the two had recently discussed the possibility of Ivey being employed by Worthy. The assault and vandalism cannot be characterized as professional services. Nor can Worthy's willful, criminal acts be characterized as negligent acts under the plain language of the policy. Although the complaint includes a cause of action for negligent infliction of emotional distress, the claim does not give rise to a possibility of coverage under the policy because only those negligent acts performed in rendering or failing to render professional services are covered by the policy. Even if it were possible to divine coverage from the scope of the policy, Worthy's acts would still not be covered because of the language in the exclusions clause. According to the exclusions clause the policy does not apply to claims "arising out of any dishonest, criminal, fraudulent or malicious act . . . of any Insured," or to a claim arising from "destruction of any tangible property." Docket No. 20, Ex. M at 2. This is precisely the type of misconduct committed by Worthy.

Because the causes of action alleged by Ivey against Worthy were so plainly excluded from coverage under the policy, Worthy had no reasonable expectation that American Home would defend the action.[1] Ivey's complaint did not, on its face, "allege[] facts which, standing alone g[a]ve rise to a possible finding of liability covered by the policy." *Afcan*, 595 P.2d at 645. American Home, therefore, had no duty to defend the action. *See Bellefonte Ins. Co. v. Wayson*, 489 F. Supp. 58, 60 (D. Alaska 1980) (where exclusion from coverage was explicit, insurance company was relieved from the duty to defend).

II.   **Estoppel**

Concluding that Worthy's conduct was explicitly not covered by the American Home policy such that American Home did not have a duty to defend does not end the inquiry. Plaintiffs argue that whether or not American Home had a duty to defend, its failure to acknowledge the tender

---

[1] Worthy's subjective lack of an expectation of coverage is demonstrated by a letter written by Worthy's counsel, Christine Schleuss. Schleuss wrote: "I have also tendered your defense to American Home Assurance. Quite frankly, I am doubtful whether that policy will protect you in any way because it seems to exclude the allegations in this amended complaint." Docket No. 30, Ex. B.

ORDER

letter sent by Worthy's counsel, estops it from denying coverage under the policy. Docket No. 25 at 2–7.

The elements of equitable estoppel are "the assertion of a position by conduct or word, reasonable reliance thereon by another party, and resulting prejudice." *Maynard v. State Farm Mut. Auto Ins. Co.*, 902 P.2d 1328, 1330 (Alaska 1995) (quoting *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102 (Alaska 1978)). Traditionally,

> courts have applied the doctrines of waiver and estoppel to insurance contracts in a liberal manner to prevent injustice where the insured has been misled by the acts or statements of the company or its agents; and while waiver and estoppel have been held applicable to nearly every area in which an insurer may deny liability, the courts of most jurisdictions agree that these concepts are not available to broaden the coverage of a policy so as to protect the insured against risks not included therein or expressly excluded therefrom.

26 Am. Jur. 2d *Proof of Facts* 137 § 3; *see also* 26 Am. Jur. 2d *Proof of Facts* 137 § 5.5 ("Estoppel doctrine, which provides that an insurer who refuses to defend its insured is estopped from raising policy defenses to coverage, does not apply if an insurer had no duty to defend or if the insurer's duty to defend was not properly triggered or . . . a comparison of the policy and complaint reveals that there clearly was no coverage or potential for coverage." (Citing *State Farm Ins. Co. v. Am. Servs. Ins. Co.*, 773 N.E.2d 666, 672 (Ill. App. Ct. 2002))); Rowland H. Long, *The Law of Liability Insurance*, 2005 Vol. 4 § 17.16 ("The cases from all jurisdictions generally agree that neither waiver nor estoppel may be used to create primary coverage where none previously existed. Neither theory will extend a policy where coverage does not exist." (Collecting cases)).

No Alaska case directly addresses whether original coverage can be manufactured by estoppel. However, the vast weight of authority holding that coverage cannot be created by estoppel leaves little room for doubt about how Alaska courts would confront this issue. Even if Alaska opted to stray from the majority view that a policy cannot be extended by estoppel to include non-covered events, that analysis would not be determinative here because Plaintiffs cannot satisfy the basic elements of estoppel. Specifically, Plaintiffs can show neither reasonable reliance nor prejudice.

It was not reasonable for Worthy to rely on an act or omission by American Home for several reasons. First, American Home never responded to Worthy's letter. After attempting to

ORDER

tender a claim, no news is not good news. There is no indication that Worthy followed up with American Home by inquiring about his purported tender. Second, the American Home policy outlined claims reporting procedures, with which Worthy failed to comply.[2] The focus of estoppel is equity. It is inequitable to reward an insured by expanding a policy where the insured improperly tendered the claim.

Regarding prejudice, there is nothing to indicate that Worthy was prejudiced by American Home's failure to respond. Worthy's independent defense counsel was fully paid for by State Farm. Docket No. 20, Ex. D. Prejudice is an essential element of any estoppel claim because,

> the theory of the principle is that the party is estopped in order to prevent the harm or prejudice which would befall the other party were he or she not entitled to rely on the impression created by the actor. Thus, it has been declared that a necessary and essential element of estoppel is that the party claiming it must have been injured, or prejudiced, or his or her interest adversely affected in a substantial manner, or that such result will follow if estoppel is not invoked.

Lee R. Russ, Thomas F. Segalla, 17 *Couch on Insurance* 3d, § 239:112. In the absence of a showing of prejudice resulting from American Home's failure to respond to the tender letter, Plaintiffs cannot meet the elements of estoppel.

## CONCLUSION

Whether or not American Home received the tender letter is a disputed issue of fact. However, the existence of some disputed fact that does not constitute a *material* disputed fact cannot suffice to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 247–48. It is clear that Worthy's criminal, violent conduct was not covered by the professional services policy he had with American Home. Because his conduct was so far beyond the bounds of coverage, American Home had no duty to defend the action. American Home's failure to respond to the tender letter does not estop it from denying coverage because coverage for conduct not within the policy cannot be forged anew by estoppel, and because Worthy did not reasonably rely upon, nor was he prejudiced by, American Home's failure to respond to the tender letter.

---

[2] The State Farm policy states "**Do not send an Errors and Omissions claim form directly to American Home.**" Docket No. 30, Ex. C at 2.

ORDER

**IT IS THEREFORE ORDERED:**

The motion for summary judgment at **Docket No. 20** is **GRANTED**. The request for oral argument at **Docket No. 27 is DENIED**. The Court has reviewed the arguments and authorities presented in the motion for leave to file supplemental briefing at **Docket No. 37**. Because the supplement would not alter the Court's analysis, the motion is **DENIED**.

Dated at Anchorage, Alaska, this 19 day of May 2006.

                                                   /s/ Timothy M. Burgess
                                                  **TIMOTHY M. BURGESS**
                                                  United States District Judge

ORDER

C:\Temp\notes06E812\~7308633.wpd                  9