*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, e-mail corrections@appellate.courts.state.ak.us.*

## THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RANCE BRANNON and PAUL BRANNON, | Supreme Court No. S-11505 |
| Appellants, | Superior Court No. 3AN-02-05553 CI |
| v. | O P I N I O N |
| CONTINENTAL CASUALTY COMPANY, A Stock Insurance Company and CNA INSURANCE COMPANIES, | No. 6016 - June 9, 2006 |
| Appellees. | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Sharon L. Gleason, Judge.

Appearances: Peter J. Maassen, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellants. Jahna M. Lindemuth and John A. Treptow, Dorsey & Whitney LLP, Anchorage, for Appellees.

Before: Bryner, Chief Justice, Matthews, Eastaugh, Fabe, and Carpeneti, Justices.

EASTAUGH, Justice.

## I.    INTRODUCTION

Paul and Rance Brannon sued Terry Pfleiger. When his insurer, Continental

EXHIBIT

Casualty Company, failed to defend him, Pfleiger assigned to the Brannons his rights arising from Continental's failure to defend. The Brannons then sued Continental. Pfleiger later confessed judgment to the Brannons in the underlying lawsuit. Reasoning that the statute of limitations began running on Pfleiger's claims against Continental when Continental denied Pfleiger a defense, the superior court dismissed the Brannons' suit against Continental as untimely. We hold that the claim that Continental breached its duty to defend accrued when Continental notified Pfleiger it would not defend him, but that the running of the limitations statute was equitably tolled until the underlying litigation was complete. We therefore vacate the judgment of dismissal and remand.

## II.    FACTS AND PROCEEDINGS

### A.    The Underlying Lawsuit

Paul and Rance Brannon purchased California restaurant franchising assets from California investors in 1992. The assets included a Johnny Rockets restaurant in Huntington Beach, a Johnny Rockets restaurant in Newport Beach, and Johnny Rockets franchising rights for Orange County. Terry Pfleiger, an associate at Jack White Real Estate (JWC) in Anchorage, acted as the Brannons' real-estate broker during this transaction.[1] For his assistance with the transaction, Pfleiger was given a ten percent

---

[1]    Continental Casualty Company contends that Pfleiger was an investor in the franchising deal, not a real-estate broker. The Brannons argue that Pfleiger acted as their real-estate broker and advisor. On appeal from a summary judgment, we review the facts in a light most favorable to the party against whom summary judgment was entered. *Zok v. Collins*, 18 P.3d 39, 40 n.2 (Alaska 2001). Because Pfleiger's role is disputed and summary judgment was entered against the Brannons, we view the facts in the light most favorable to the Brannons. We assume here that Pfleiger was acting as a real-estate broker, and do not assume that he was an investor.

Our discussion of facts is meant to give context to the legal issues arising out of the summary judgment; it is not meant to preclude the parties from litigating (continued...)

**6016**

EXHIBIT 1 P. 2

share in JROC, Inc., the corporation formed to manage the restaurant franchises.

The asset purchase agreement was secured by a $750,000 note executed by JROC, Inc. and was jointly and severally guaranteed by Rance and Clara Brannon, Paul Brannon, Terry and Nancy Pfleiger, and Mr. and Mrs. Ronald Paradis.

JROC defaulted on the note in 1994. In December 1994 the California investors filed an Alaska superior court complaint captioned *JROC Fashion Island v. Brannon*, Case No. 3AN-94-10728 CI, against Rance Brannon, Clara Brannon, Paul Brannon, Terry Pfleiger, and Nancy Pfleiger. Paul and Rance Brannon then filed a cross-claim (the "Brannon cross-claim") against Terry Pfleiger and JWC, alleging that "[a]s broker and agent for the Brannons, Pfleiger and JWC owed fiduciary duties to the Brannons." The Brannons requested damages exceeding $1,000,000.

Through his personal attorney, Pfleiger answered the Brannon cross-claim on July 11, 1997. Continental Casualty Company was JWC's professional liability insurance carrier. It was promptly notified of the Brannon cross-claim. On July 16, 1997 Continental sent Pfleiger a "Reservation of Rights" letter which stated the insurance company's intent to "preserve the rights of all concerned without waiving our right to continue our coverage investigation." Pfleiger's attorney wrote Continental, arguing that allegations in the Brannon cross-claim triggered Continental's duty to defend Pfleiger under JWC's insurance policy. On August 13, 1997 Continental sent Pfleiger's attorney a letter citing nine policy exclusions to show that the Brannon cross-claim was not covered by the insurance policy. The letter also stated:

> Based on the documentation we have received to-date we must respectfully disclaim coverage to your client for this loss. We base our disclaimer on the fact that your client was

---

[1](...continued)
genuine issues of material fact on remand.

6016

EXHIBIT 1, p. 3

> not working within the scope of his duties as an agent for Jack
> White Real Estate at the time he entered into the franchise
> purchase agreement with the [Brannons]. In addition, the
> above quoted exclusions would apply to this loss. Finally, the
> original complaint was filed prior to the policy's inception
> date.

On the same day, in a separate letter, Continental notified JWC that it would continue to defend JWC against the Brannon cross-claim under a reservation of rights. (JWC settled with the Brannons for $60,000 in 1998.)

Facing both the original *JROC Fashion Island* lawsuit and the Brannon cross-claim, Pfleiger filed for bankruptcy in September 1997. Pfleiger's bankruptcy petition automatically stayed all claims against him.[2] The trustee of Pfleiger's bankruptcy estate moved in 1998 for authority to sell and assign to the Brannons any claims Pfleiger had against Continental arising out of the Brannon cross-claim. The bankruptcy court issued an order on November 5, 1998 authorizing the trustee to sell to the Brannons Pfleiger's claims "that arise from the refusal of Continental Casualty Company to defend and provide coverage for the Brannons' claims against [Pfleiger] related to the two Johnny Rocket franchise restaurant operations in California." The trustee executed the assignment of these claims on November 18, 1998.

On July 15, 1999 the Brannons, invoking Pfleiger's assigned rights against Continental, filed a superior court complaint against Continental alleging breach of contractual duties under the insurance policy, negligence, and breach of the covenant of good faith and fair dealing. This 1999 complaint was never served on Continental and was dismissed without prejudice in March 2001 for failure to prosecute.

In 2000 the Brannons sought bankruptcy court relief from the stay of

---

[2]    11 U.S.C. § 362(a).

-4-

6016

EXHIBIT 1 p. 4

proceedings against Pfleiger; they did so to establish Pfleiger's liability to them on their cross-claim, obtain a liability judgment in their favor against Pfleiger, and pursue that judgment against Continental for breach of its duty to defend Pfleiger. The bankruptcy court granted relief from the stay on October 6, 2000 "solely for the purpose of allowing the Brannons to liquidate their claim against [Pfleiger] . . . and then to pursue collection of any judgment which may be entered in their favor against [Continental]." Four days later, on October 10, 2000, the bankruptcy court discharged "all" of Pfleiger's "dischargeable debts."

In August 2003 Pfleiger confessed judgment to the Brannons for $2,889,863.34. This amount included a principal award of $1,713,444 plus pre-judgment interest and attorney's fees. Pfleiger's confession of judgment was filed in the *JROC Fashion Island* case on August 28, 2003.

### B.    The Current Lawsuit

On March 15, 2002 the Brannons filed a superior court complaint against Continental that was nearly identical to their unserved 1999 complaint. Continental moved for summary judgment, asserting the statute of limitations, the doctrine of unclean hands, and policy exclusions; it also moved for partial summary judgment on damages. The Brannons moved for partial summary judgment on their claim that Continental had breached its duty to defend Pfleiger.

After oral argument on the summary judgment motions, the superior court held that "[t]he statute of limitations for the breach of the duty to defend, when the insurance contract excludes coverage, should begin to run on the date the insurance company refuses to defend." It concluded that because Continental had denied Pfleiger a defense on August 13, 1997, the three-year statute of limitations began to run on that

-5-                                                 6016

EXHIBIT 6 p.5

day.[3] Because the Brannons did not file their complaint until March 15, 2002, more than three years later, the superior court granted Continental's motion for summary judgment on statute of limitations grounds.

The superior court also held that Continental did not have a duty to indemnify Pfleiger under the terms of the insurance contract. The superior court stated that "it is uncontroverted that Pfleiger had a direct 10% interest in the profits and losses of the Johnny Rockets investment . . . . Accordingly, Exclusion N of the policy applies and there was no coverage for the alleged loss under the terms of the policy." But the court left open the possibility that Continental could "be estopped to deny coverage" if it was found to have breached the duty to defend.

The superior court expressly stated that it was not ruling on the other pending motions, including the parties' motions for summary judgment on the question whether there was a breach of the duty to defend, Continental's motion for summary judgment on damages, and Continental's motion for summary judgment on the issue of unclean hands.

The Brannons appeal the ruling that their complaint against Continental was untimely.

## III.   DISCUSSION

### A.   Standard of Review

We review summary judgment decisions de novo, affirming if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter

---

[3]      The applicable statute of limitations, AS 09.10.053, requires that a contract action be commenced within three years.

-6-                                                           **6016**

EXHIBIT ___ p. 6

of law.[4]  In reviewing the grant of a summary judgment motion, all factual inferences must be drawn in favor of the party against whom summary judgment was entered.[5]  Whether a claim is barred by the statute of limitations is a question of law that we review de novo.[6]

**B.    A Cause of Action for Breach of the Duty To Defend Accrues when the Insurance Company Denies a Defense, but Is Equitably Tolled Until Entry of Final Judgment.**

Continental's obligation to defend its insureds against a third-party claim is contractual.[7]  Generally, a cause of action for breach of contract accrues, and the statute of limitations begins to run, "at 'the time of the breach of the agreement, rather than the time that actual damages are sustained as a consequence of the breach.' "[8]  A cause of action for denial of coverage under an insurance policy accrues when coverage is disclaimed[9] and the insured is notified.[10]

---

[4]    *Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 966 (Alaska 2000).

[5]    *Morgan v. Fortis Benefits Ins. Co.*, 107 P.3d 267, 269 (Alaska 2005).

[6]    *Alderman v. Iditarod Props., Inc.*, 104 P.3d 136, 140 (Alaska 2004).

[7]    *Tush v. Pharr*, 68 P.3d 1239, 1249 (Alaska 2003) (holding duty to defend is contractual obligation); *see also Afcan v. Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979) ("An insurer's duty to defend and its obligation to indemnify are separate and distinct contractual elements.").

[8]    *K&K Recycling, Inc. v. Alaska Gold* Co., 80 P.3d 702, 725 (Alaska 2003) (quoting *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975)).

[9]    *Howarth*, 540 P.2d at 490 (holding that statute of limitations began to run when insured suffered loss and insurance company denied insured's claim).

[10]    *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 227
(continued...)


EXHIBIT 1, p. 7

Continental argued below that, per this precedent, the statute of limitations for the claim of breach of the duty to defend began to run on August 13, 1997 — when Continental notified Pfleiger that it would not defend him in *JROC Fashion Island.*

The superior court stated that the "cases that defendant cites on this issue appear dispositive" and held that the statute of limitations on the breach of the duty to defend claim began running on August 13, 1997. The superior court also stated: "Where, as here, there is no contractual duty to indemnify, but at most only a duty to defend, the statute of limitations should begin to accrue at the time the defendant first refused to defend Pfleiger."[11]

When an action for breach of the duty to defend accrues is an issue of first impression for this court. The Brannons argue that we should hold that the duty to defend does not accrue until the underlying litigation is resolved — here, on August 28, 2003, when Pfleiger's confession of judgment was entered. A majority of the courts examining this issue have determined that a cause of action for breach of the duty to defend accrues "with the termination of the underlying litigation which the insurer refused to defend."[12]

---

[10](...continued)
(Alaska 1973) (holding in context of first-party insurance that cause of action for denial of insurance coverage does not accrue until insurer notifies insured of denial of coverage).

[11]    We have repeatedly observed that the duty to defend is separate from and broader than the duty to indemnify. *E.g., Stephan & Sons, Inc. v. Municipality of Anchorage,* 629 P.2d 71, 73 (Alaska 1981) ("We have already held in two contexts that there may be a duty to defend even if there is no duty to indemnify: insurance cases and implied indemnity cases."); *Afcan,* 595 P.2d at 645 ("Depending upon the nature of the claim against the insured, the insurer may have an obligation to defend although it has no ultimate liability under the policy.").

[12]    Jane Massey Draper, Annotation, *Limitation of Action Against Insurer for Breach of the Contract to Defend,* 96 A.L.R.3d 1193, § 2(a) (2004); *see also* 2 ALLAN D.
(continued...)

-8-                                                                    6016


EXHIBIT 1, p. 8

Although insurance companies normally argue that breach of the duty to defend should be treated like any other breach of contract,[13] numerous courts have reasoned that the duty to defend cause of action is distinguishable from other breach of contract causes of action because the duty to defend is ongoing.[14] For example, the United States Court of Appeals for the Ninth Circuit has stated: "The insurer's duty to defend is a continuing duty that may be assumed at any time before final judgment. The insured may therefore elect to wait until a final judgment is entered before filing [its] action against the insurer."[15]

The California Supreme Court has taken a slightly different approach. In *Lambert v. Commonwealth Land Title Insurance Co.*, it held that the cause of action for refusal to defend "accrues upon discovery of loss or harm, i.e., when the insurer refuses to defend."[16] But the court noted a problem with this accrual date: "[T]he underlying

---

[12](...continued)
WINDT, INSURANCE CLAIMS AND DISPUTES § 9.2, at 48 (4th ed. 2001) ("The majority view . . . is that the insured's cause of action does not accrue until the termination of the third-party action brought against the insured.").

[13]    Draper, *supra* note 12 at § 2(a).

[14]    *See, e.g., Vigilant Ins. Co. v. Luppino*, 723 A.2d 14, 19 (Md. 1999); *Colpan Realty Corp. v. Great Am. Ins. Co.*, 373 N.Y.S.2d 802, 804 (N.Y. Sup. 1975); *Bush v. Safeco Ins. Co. of Am.*, 596 P.2d 1357, 1358 (Wash. App. 1979).

[15]    *Tibbs v. Great Am. Ins. Co.*, 755 F.2d 1370, 1375-76 (9th Cir. 1985) (citation omitted). *See also* 17 GEORGE J. COUCH, COUCH ON INSURANCE § 236.102 (2004) ("Unlike a duty to pay, which becomes fixed upon rendition of a judgment[,] . . . the duty to defend is necessarily a continuing one that commences upon notice of the claim and extends at least until judgment is entered and all appeals from it have been resolved."); *Vigilant*, 723 A.2d at 19 ("[A]n insured should be allowed to expect the insurer to step in and cure its breach so long as the underlying action is continuing.").

[16]    *Lambert v. Commonwealth Land Title Ins. Co.*, 811 P.2d 737, 739 (Cal. 1991).

-9-                                                          **6016**

 EXHIBIT __ p. 9

litigation may take over two years . . . and would allow expiration of the statute of limitations on a lawsuit to vindicate the duty to defend even before the duty itself expires. This grim result is untenable."[17] It therefore held that "[a]lthough the statutory period [for breach of the duty to defend] commences upon the refusal to defend, it is equitably tolled until the underlying action is terminated by final judgment."[18]

We adopt the *Lambert* rule. It achieves the same result as the majority rule but is more consistent with our existing contract case law. We have repeatedly observed that a cause of action for breach of contract usually accrues when the agreement is breached.[19] An insurance company therefore breaches the duty to defend when it refuses to defend the insured and the insured is notified of the refusal.

The *Lambert* rule is also more closely aligned with general Alaska statute of limitations principles than the majority rule. One justification for the majority rule is that the extent of the injury is unknown until the entry of final judgment.[20] But in Alaska it is irrelevant if the full scope of the injury is known;[21] the cause of action accrues when

---

[17]   *Id.*

[18]   *Id.*

[19]   *E.g., Kaiser v. Umialik*, 108 P.3d 876, 880 (Alaska 2005); *K&K Recycling, Inc. v. Alaska Gold Co.*, 80 P.3d 702, 724-25 (Alaska 2003); *Bauman v. Day*, 892 P.2d 817, 827 (Alaska 1995); *Howarth v. First Nat'l Bank of Anchorage*, 540 P.2d 486, 490-91 (Alaska 1975). *See also* 14 GEORGE J. COUCH, COUCH ON INSURANCE § 205.62 (2004).

[20]   2 ALLAN D. WINDT, INSURANCE CLAIMS AND DISPUTES § 9.2, at 49 (4th ed. 2001) (stating that best rationale for majority rule is that "it is not until [the underlying action is completed] that the totality of the insured's claim against the company is ascertainable and the right of action is complete").

[21]   *Sopko v. Dowell Schlumberger, Inc.*, 21 P.3d 1265, 1272 (Alaska 2001) (noting that injured party need not know full extent of injuries before statute of limitations (continued...)

-10-                                                    **6016**


EXHIBIT ___ p. 10

the breach occurs.[22]

        The doctrine of equitable tolling is also well-rooted in Alaska law.[23] Three conditions must be met before a statute of limitations may be equitably tolled: "(1) pursuit of the initial remedy gives defendant notice of plaintiff's claim, (2) defendant's ability to gather evidence is not prejudiced by the delay, and (3) plaintiff acted reasonably and in good faith."[24] An insurance company has notice of a potential duty to defend when the insured tenders the defense.[25] Once the defense is tendered, the insurance company has the ability and motivation to gather evidence; any prejudice that thereafter results likely arises from the insurance company's refusal to defend and should not be held against the insured. Whether an insured has acted reasonably and in good faith is a question of fact for the superior court to determine on a case-by-case basis.

        The California approach also aligns more closely with Alaska law in that it allows (but does not force) an insured to file suit for breach immediately after the insurance company denies the defense.[26] The majority rule implies that the insured should

---

[21](...continued)
begins to run under discovery rule).

   [22]    *Howarth*, 540 P.2d at 491.

   [23]    *Dayhoff v. Temsco Helicopters, Inc.*, 772 P.2d 1085, 1087 (Alaska 1989). *See also Kaiser*, 108 P.3d at 881-82; *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 886 (Alaska 2004); *Smith v. Thompson*, 923 P.2d 101, 105 (Alaska 1996).

   [24]    *Dayhoff*, 772 P.2d at 1087.

   [25]    *Lambert v. Commonwealth Land Title Ins. Co.*, 811 P.2d 737, 741 (Cal. 1991).

   [26]    *Id.*

6016

EXHIBIT ___ p. 11

wait until final judgment is entered.[27] If the cause of action does not accrue until entry of final judgment in the underlying litigation,[28] an insured who files an action before entry of final judgment would be doing so prematurely. In Alaska a party can, during the pendency of the underlying litigation, seek a declaratory judgment on whether the insurance policy requires the insurer to defend the insured in the underlying litigation.[29] But tolling the statute of limitations during the pendency of the underlying litigation avoids requiring the insured to participate in two lawsuits at once. After the insurance company has denied the insured a defense, it would be potentially unfair to require the insured to file a lawsuit against the insurance company while simultaneously defending himself in the underlying lawsuit.[30]

The Brannons correctly point out that the holding in *Lambert* is similar to the way we handle the statute of limitations in some legal malpractice cases. In *Shaw v. State* we held that the statute of limitations for legal malpractice claims arising out of a

---

[27]    WINDT, *supra* note 12 at 49 ("[I]t is not until [the underlying action is complete] that the totality of the insured's claim against the company is ascertainable and the right of action is complete.").

[28]    *See, e.g., Bush v. Safeco Ins. Co. of Am.*, 596 P.2d 1357, 1358 (Wash. App. 1979) (holding that "the cause of action [for breach of the duty to defend] does not accrue until the third party litigation involving the insured has ended in final judgment").

[29]    *State, Dep't of Transp. & Pub. Facilities v. State Farm Fire & Cas. Co.*, 939 P.2d 788, 790 (Alaska 1997) (reviewing superior court's declaratory judgment that insurance company had no duty to defend). A party can also seek a declaratory judgment on the scope of the duty to defend during pendency of the underlying litigation. *See O'Neill Investigations, Inc. v. Illinois Employer's Ins. of Wausau*, 636 P.2d 1170, 1172 (Alaska 1981).

[30]    *Cf. Shaw v. State, Dep't of Admin., Pub. Defender Agency*, 816 P.2d 1358, 1361 (Alaska 1991) ("[W]e note the desirability of allowing a criminal defendant with a valid post-conviction relief claim to pursue that remedy without the distraction of also filing a legal malpractice claim.").

-12-                                                            6016

EXHIBIT __ p. 12

criminal case should be tolled during the pendency of a claim for post-conviction relief.[31] We determined that tolling the statute of limitations would promote judicial economy, lead to certainty of damages, and assist courts by establishing a "bright-line rule."[32] Our holding here addresses these same issues. It establishes a bright-line rule by tolling the statute of limitations until final judgment in the underlying litigation. Waiting until after entry of final judgment to file against the insurer ensures that the full extent of the insured's damages is known, promoting judicial economy and reducing speculation.

We therefore hold that although a cause of action for breach of the duty to defend accrues when the insured is notified of the insurance company's refusal to defend, the statute of limitations is equitably tolled until entry of final judgment in the underlying lawsuit.

### C. The Brannons' Claim that Continental Breached Its Duty To Defend Pfleiger Is Not Time-Barred.

The superior court did not err by determining that the accrual date for the duty-to-defend claim was August 13, 1997. But, as we held above, the statute of limitations should have been equitably tolled while the *JROC Fashion Island* litigation was pending. That litigation was ongoing until at least August 28, 2003, when Pfleiger's confession of judgment was entered. The Brannons' March 15, 2002 complaint was therefore not untimely.

Continental contends that Pfleiger's confession of judgment "could not start the statute of limitations running as a matter of law." It argues that the confession of judgment was void from the beginning because it "was entered after Pfleiger's bankruptcy discharge." Continental points to *Standifer v. State*, in which we held that "the district

---

[31]    *Id.* at 1361.

[32]    *Id.*

-13-

6016

EXHIBIT ___ p. 13

court will be deprived of subject matter jurisdiction to act on the judgment" if the debt is discharged.[33] We there instructed the district court to set aside a default judgment as void if the court determined that the underlying debt had been previously discharged by Standifer's bankruptcy.[34]

Our review of the bankruptcy court's actions in this case convinces us that the bankruptcy court did not discharge, and did not intend to discharge, the Brannons' claims against Pfleiger. All claims against Pfleiger were automatically stayed when he filed for bankruptcy protection.[35] The trustee of Pfleiger's bankruptcy estate moved for authority to sell the Brannons all of Pfleiger's claims against Continental arising out of the Brannon cross-claim. The bankruptcy court then entered an order authorizing the trustee to sell to the Brannons Pfleiger's claims "that arise from the refusal of Continental . . . to defend and provide coverage for the Brannons' claims against [Pfleiger] related to the two Johnny Rocket franchise restaurant operations." Per that order, the bankruptcy trustee assigned those claims to the Brannons in 1998.

In 2000 the Brannons moved in bankruptcy court for relief from the stay of claims against Pfleiger "in order to establish [Pfleiger's] liability for the Brannon Crossclaims and obtain a judgment for damages in the State Court Lawsuit, and in turn, attempt to recover these damages from [Pfleiger's] insurance carrier by pursuing the claims and rights purchased from [Pfleiger's] bankruptcy estate." On October 6, 2000

---

[33]    *Standifer v. State*, 3 P.3d 925, 928 (Alaska 2000).

[34]    *Id.* at 929 ("Thus, all judgments purporting to establish personal liability of a debtor on a discharged debt, including judgments obtained after bankruptcy, are void to that extent. They are not voidable, they are void *ab initio* as a matter of federal statute.").

[35]    11 U.S.C. § 362(a).

-14-                                                                              6016


EXHIBIT 12.14

the bankruptcy court granted the Brannons relief from the stay "solely for the purpose of allowing the Brannons to liquidate their claim against [Pfleiger] in the state court proceeding and then to pursue collection of any judgment which may be entered in their favor against the debtor's insurance carrier." On October 10, 2000 the bankruptcy court released Pfleiger from all "dischargeable debts." The October 10 discharge also ordered: "Any judgment heretofore or hereafter obtained in any court other than this court is null and void as a determination of the personal liability of the debtor . . . ." Given the bankruptcy court's entry of the 1998 order authorizing the sale of Pfleiger's claims to the Brannons and its entry of the October 6, 2000 order lifting the stay and allowing the Brannons to liquidate their claim against Pfleiger and pursue enforcement of the judgment against Continental, it would be nonsensical to read the bankruptcy court's October 10, 2000 order entered four days later as discharging Pfleiger from the Brannons' claim against him.

Moreover, we have previously held that an insurance company, in order to reduce its liability, cannot force an insured to declare bankruptcy.[36] Holding that the bankruptcy court's discharge removed Pfleiger's ability to confess judgment on the Brannons' claims would allow Continental to benefit from forcing its insured into bankruptcy. Our reading of the bankruptcy court's orders avoids this inequitable result.[37]

---

[36]     *Bohna v. Hughes, Thorsness, Gantz, Powell & Brundin*, 828 P.2d 745, 754-55 (Alaska 1992).

[37]     Other courts have similarly refused to allow an insurer's liability to be excused by the insured's bankruptcy. *See In re Jet Florida Sys., Inc.*, 883 F.2d 970, 975 (11th Cir. 1989) ("The 'fresh-start' policy [of 11 U.S.C. § 524] is not intended to provide a method by which an insurer can escape its obligations based simply on the financial misfortunes of the insured."); *In re Beeney*, 142 B.R. 360, 363 (B.A.P. 9th Cir. 1992) ("That through bankruptcy he can divest himself of his personal obligation to compensate (continued...)

-15-                                              6016

EXHIBIT 1 p 15

Continental also argues that Pfleiger's confession of judgment has no legal effect because "[t]his Court has approved the use of confessions of judgments . . . only when the defendant confessing judgment faces personal risk of liability that justifies him entering into such arrangement." But when an insurance company refuses to defend its insured, the insured can take reasonable steps to protect its interests.[38] Continental misreads *Great Divide Insurance Co. v. Carpenter*, the case on which it relies in making this argument. We there observed that an insured whose insurer has committed a material breach of one of its defense obligations is permitted to enter into a settlement agreement with the injured claimant.[39] Even settlement agreements that contain a covenant not to enforce against the insured are allowed because "an insured that has been placed at economic risk by its insurer's breach should be allowed to protect itself by shifting the

---

[37](...continued)
them for injuries suffered due to his negligence, should not wipe out the carrier's commitment which permitted him to drive a car."); *In re Jason Pharm., Inc.*, 224 B.R. 315, 321 (Bankr. D. Md. 1998) ("However, the discharge in bankruptcy, along with the coextensive permanent injunction and fresh start, are exclusive to the debtor, and do not otherwise affect the enforcement of any underlying debt, or any nondebtor liability thereon."); *Levantino v. Ins. Co. of N. Am.*, 422 N.Y.S.2d 995, 1002 (Sup. 1979) ("Nor should a plaintiff be required to undergo a bankruptcy in order to benefit the wrongdoer who has caused his financial distress in the first place.") (citation omitted).

[38]     *Theodore v. Zurich Gen. Accident & Liab. Ins. Co.*, 364 P.2d 51, 55 (Alaska 1961) (holding that after insurer had denied defense insured was "justified in doing what it considered best to protect its interests"). *See also Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 464-65 (Alaska 1997) (noting that if insurance company wrongfully denies coverage, insured is excused from complying with policy obligations); *Davis v. Criterion Ins. Co.*, 754 P.2d 1331, 1332 (Alaska 1988) (holding that if insurer wrongfully denied coverage, insurer could not raise insured's failure to provide notice of a suit under a cooperation clause as a defense to liability).

[39]     *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 608 (Alaska 2003).

-16-                                                    6016


EXHIBIT 1 p. 16

risk to the breaching insurer without first subjecting itself to potential financial ruin."[40]

But we also noted in *Great Divide* that "[c]ovenant settlements can be abused";[41] because of the potential for abuse, we stated that "we have been careful to hold that an insurance company that has materially breached its defense obligations whose insured has made such an agreement is not automatically bound by the agreement."[42] The check on this potential abuse is a reasonableness review to be conducted by the trier of fact.[43]

In short, the bankruptcy court's October 10, 2000 order did not discharge the Brannons' claim against Pfleiger. Pfleiger's subsequent confession of judgment was therefore not void.

We assume that the entry of Pfleiger's confession of judgment ended the *JROC Fashion Island* litigation. Although the cause of action for breach of the duty to defend accrued when Continental notified Pfleiger of its refusal to defend, the statute of limitations was equitably tolled at least until Pfleiger's confession of judgment was entered on August 28, 2003. The Brannons' March 15, 2002 complaint was therefore timely.

### D.    We Decline To Affirm on Alternative Grounds.

Continental argues that, regardless of the limitations issue, we should affirm

---

[40]    *Id.* at 608-09.

[41]    *Id.* at 609.

[42]    *Id.*

[43]    *Id.*

6016

EXHIBIT \_\_\_ p. 17

the superior court's decision because Continental had no duty to defend Pfleiger.[44] It claims that Continental's policy excluded coverage for any transaction in which Pfleiger was an investor or had a financial interest and that it is "undisputed" that "Pfleiger was an investor in the JROC deal." Continental had also moved for summary judgment based on unclean hands and for partial summary judgment on damages.

The superior court stated that, having resolved the case on the statute of limitations issue, it was not reaching the many other issues presented by the parties. We decline to affirm the judgment on the basis of any issue the superior court did not reach. Continental's alternative grounds for summary judgment potentially raise questions about whether there are genuine, material factual disputes. The superior court is in the best position to consider those threshold questions for the first time.[45] We remand for further proceedings on the remaining motions.

## IV.   CONCLUSION

For the reasons discussed above, we VACATE the judgment of dismissal and REMAND.

---

[44]    We can affirm a decision on grounds other than that on which the superior court relied so long as the record supports our resolution. *Zaverl v. Hanley*, 64 P.3d 809, 819 n.25 (Alaska 2003).

[45]    *See, e.g., Fyffe v. Wright*, 93 P.3d 444, 453 (Alaska 2004) (holding that superior court is "better-equipped" to decide fact-intensive issue).

-18-                                                    6016


EXHIBIT ___